**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Maria MAHOLIAS, a.k.a. Maria Rodriguez, Defendant– Appellant.**

**No. 91–1763.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1992.

Decided Jan. 25, 1993.

Rodney Cubbie (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Dennis P. Coffey (argued), Coffey, Coffey & Geraghty, Dominic Frinzi, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Maria Maholias, also known as Maria Rodriguez, was charged with one count of conspiring to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. She was convicted as charged and received a prison sentence of six and one-half years. Maholias challenges the guilty verdict on appeal and we affirm.

## I.

The brothers Blas—Nelson, Luis, Jaime, and Raphael—ran an interstate cocaine distribution network. The ring's major players, Nelson and Luis, acquired cocaine to be distributed by Raphael and Jaime. Initially, Nelson and Luis secured cocaine from local sources in Milwaukee. In due course, the two brothers moved to Florida, where they oversaw the transportation of cocaine to other members of the family business in Milwaukee.

The Blas organization bought from and sold to various suppliers and dealers between 1986 and 1989. Some of these people deserve mention.[1] In early 1986, Nelson and Luis sold cocaine they obtained in Milwaukee from an individual named Manny Guerra. Beginning in December, 1986, under the direction of Luis Blas, Gary Baranyk distributed cocaine out of two houses leased by Luis. One of the people to whom Baranyk distributed cocaine for resale was Frederick Grace, a Milwaukee dealer.

When Nelson and Luis eventually graduated to trafficking in greater quantities of cocaine, Baranyk became their courier. In the summer of 1987, the three men travelled to Florida, where Nelson and Luis purchased two kilograms of the drug from an individual named Granda. Baranyk drove back to Milwaukee with the cocaine cached under the rear seat of his car.

During another trip that same year, Baranyk met Jorge Garcia, who offered to supply cocaine to the Blases at a lower price than Granda charged. When he returned to Milwaukee, Baranyk relayed this information to Luis, who contacted Nelson. A few weeks later, Baranyk returned to Florida and met with Garcia and Nelson at Nelson's new home. The negotiations proved a success; Garcia sold Nelson four kilograms of cocaine, which Baranyk delivered to Luis.

Between the summer of 1987 and January, 1988, Baranyk made approximately six round trips to Florida for Nelson and Luis, transporting two to four kilograms each time. Back in Milwaukee, Raphael and Jaime Blas distributed the product. In 1988, on his final trip to Florida at the behest of Luis, Baranyk purchased two kilograms from Garcia. After that, his days as a drug courier at an end, Baranyk settled down to run a drug house in Milwaukee for Luis.

The Blas organization, it turns out, had yet another Florida connection. In the spring of 1987, Baranyk met Maria Maholias in Luis Blas's apartment in Milwaukee. Maholias and her husband, Hector Rodriguez, were visiting from Fort Lauderdale. On that occasion, Baranyk heard Maholias and Luis negotiate the sale of Luis's car. Maholias would take the car and assume Luis's car payments; Luis would receive cocaine in return. Following this discussion, Maholias and her husband departed in the car.

Subsequently, in July, Baranyk, Nelson, and Luis visited Maholias at her home in Florida. In Baranyk's presence, Maholias asked Luis why he no longer bought cocaine from her. Luis responded that her prices were too high and that he had to make money. Later that summer, Nelson informed Monte Moralez, another Blas courier, that he was upset because Maholias was supplying cocaine to Luis at a lower price than Nelson was then charging his brother.

George Garcia was the nephew of the Blas brothers. In 1988, one year out of high school, he began distributing cocaine for his uncle, Raphael Blas, in Milwaukee. He later distributed larger quantities for Luis.

---

**1.** A substantial number of witnesses testified on behalf of the government at trial. For the sake of brevity, we recount only the testimony relevant to this appeal.

George Garcia met Maria Maholias through his girlfriend. In 1988, when Garcia approached Maholias to purchase an ounce of cocaine, she directed him to Maria Zabala, Garcia's aunt who lived in Milwaukee. Zabala sold Garcia an ounce of cocaine, which Garcia subsequently resold. When Garcia informed Zabala that he would return to purchase a larger quantity, but might be short of funds, Zabala responded that she would have to check with Maholias. On the next visit, Zabala sold Garcia two ounces of cocaine even though he was $150 short.

For the next four months, Garcia made weekly purchases from his aunt. When Zabala was unavailable, Garcia bought from Jaime and Diane Blas. During one visit to Zabala's home, Zabala told her nephew that Maholias supplied her with cocaine from Florida. On another occasion, Maholias herself told Garcia that she had purchased a kilogram of cocaine from Luis Blas because her regular supplier was out of town. Because the cocaine was of rather poor quality, Maholias sold it to Garcia at a discount.

Garcia's relationship with Zabala ended when he arranged the robbery of her home, netting $1,500 in cash and eight ounces of cocaine. A distraught Maholias called Garcia, complaining that she had been robbed, referring to the theft of drugs and money from Zabala's residence. Wishing to keep Maholias as a supplier, Garcia visited Florida to quell any suspicion of his involvement. The plan failed; Maholias accused Garcia of the robbery and he admitted his involvement. Thereafter, realizing Maholias would no longer sell to him, Garcia began buying cocaine from Nelson.

Sometime after the robbery, Maholias told Diane Blas that Garcia had "ripped her off" by robbing Zabala's house, but had missed $300,000 that was hidden in a closet. Maholias added that Garcia still owed her money for cocaine she had supplied him.

In June, 1988, Diane visited Luis Blas at his new home in Florida. Luis informed her that he intended to obtain cocaine from Maholias because Nelson, from whom Luis was buying at the time, was raising his prices. Later that day, Diane paid a visit to Maholias. The two went for a drive during which Maholias recounted her rise in the drug business. When Diane asked if she and her husband could purchase a kilogram of cocaine, Maholias was initially reluctant, saying that she did not want to make trouble with Nelson by taking his customers. Diane responded that she did not answer to Nelson and would buy from whomever she chose. At that, Maholias offered to supply the kilogram at a lower price than Nelson charged.

After Diane returned to Milwaukee, her husband travelled to Florida. Jaime returned with a kilogram of cocaine, telling Diane that he had made the purchase from Maholias. The couple then divided the kilogram into smaller quantities for resale. According to Diane, Nelson later argued with Maholias when he found out about the sale.

On August 28, 1990, a grand jury sitting in Milwaukee issued an indictment that, among other counts, charged Maria Maholias and various members of the Blas organization with one count of conspiring to possess with intent to distribute in excess of five kilograms of cocaine. Except for Maholias and Frederick Grace, all named defendants entered into plea agreements with the government to resolve the charges against them. Maholias and Grace proceeded to trial. Diane Blas, Monte Moralez, Gary Baranyk, and George Garcia testified at trial to Maholias's connection to the Blas drug ring.[2] The government presented two additional witnesses, Mario Stein and Wayne Hagenkord, who testified to drug transactions with Maholias. The jury returned a verdict of guilty and Maholias now appeals.

2. Of those who testified for the government, Diane Blas and George Garcia were named as defendants in the conspiracy count.

## II.

Maholias raises two challenges to her conviction. First, she claims the evidence presented at trial is insufficient to prove that she conspired to distribute cocaine as charged in the indictment. Second, she argues the district court committed reversible error by admitting the testimony of Stein and Hagenkord.

### A. *Sufficiency of the Evidence*

■ 21 U.S.C. § 846 makes it a crime to conspire to violate § 841, which outlaws possession of cocaine with intent to distribute. A conspiracy is a "combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988).

■ To prove the defendant was a member of a conspiracy, "the government must present sufficient evidence to demonstrate that the defendant knew of the conspiracy and that [s]he intended to join and associate h[er]self with its criminal design and purpose." *United States v. Auerbach*, 913 F.2d 407, 414–15 (7th Cir.1990). In a prosecution under § 846, the government is not required to charge, and the proof need not show, an overt act committed in furtherance of the illegal objective. *United States v. Sassi*, 966 F.2d 283, 285 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). *See also United States v. Reynolds*, 900 F.2d 1000, 1003 (7th Cir.1990). Moreover, because the crime of conspiracy focuses on agreements, not groups, "the government doesn't have to prove with whom the defendant conspired; it need only prove that the defendant joined the agreement alleged, not the group." *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991).

■ Maholias contends that the evidence presented at trial is insufficient to establish a single, ongoing conspiracy of which she was a member. At most, she insists, the evidence demonstrates the existence of multiple conspiracies generally, and competition among Blas cocaine suppliers in particular. Of course, in challenging the sufficiency of the evidence, the defendant bears a substantial burden. We will uphold the conviction if the evidence, viewed in the light most favorable to the government, establishes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir.1992). The evidence need not be inconsistent with every reasonable hypothesis of innocence in order to sustain the conviction, *United States v. Moya*, 721 F.2d 606, 609–10 (7th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984), and we will not reweigh the evidence or judge the credibility of witnesses. *United States v. Johnston*, 876 F.2d 589, 593 (7th Cir.), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). While we review the record in this case for substantial evidence of Maholias's involvement in the conspiracy alleged by the government, we accept circumstantial evidence as support, even sole support, for a conviction. *United States v. Durrive*, 902 F.2d 1221, 1229 (7th Cir.1990).

Maholias's insufficiency of evidence claim posits that a fatal variance exists between the government's indictment and its proof. A variance occurs when the facts proved by the government at trial differ from those alleged in the indictment. *Townsend*, 924 F.2d at 1389 n. 1. In sum, Maholias contends the government did not demonstrate the existence of a single conspiracy.

■ Because the question of whether a single conspiracy exists is one of fact, "[t]he jury gets first crack at deciding 'whether there is one conspiracy or several when the possibility of a variance appears.'" *United States v. Paiz*, 905 F.2d 1014, 1019 (7th Cir.1990) (quoting *United States v. Percival*, 756 F.2d 600, 609 (7th Cir.1985)), *cert. denied*, —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). *See also Townsend*, 924 F.2d at 1389. Even if

the evidence arguably establishes multiple conspiracies, there is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment. *Id.* at 1389.

■ The evidence in this case is more than sufficient to support the jury's finding of a single conspiracy. At trial, various members of the Blas organization described their involvement in a common scheme to distribute cocaine, of which Nelson and Luis Blas were the principals. Witnesses included drug couriers (Baranyk, Moralez) and distributors (Diane Blas, George Garcia) who described Maholias's participation in the scheme.

Baranyk was present when Maholias and Luis Blas discussed exchanging Luis's car for cocaine. Later, also in Baranyk's presence, Maholias asked Luis why he no longer purchased cocaine from her. When George Garcia approached Maholias to buy cocaine, she directed him to Maria Zabala, who identified Maholias as her supplier. Later, both Maholias and Luis Blas told Garcia that Blas had supplied the defendant with cocaine when her regular supplier was unavailable.

Diane Blas corroborated Garcia's testimony by testifying that Maholias mentioned Garcia's debt for cocaine she had sold him. On a different occasion, Maholias complained to Diane that Garcia had "ripped her off" by robbing Zabala. Luis Blas told Diane that he planned to buy cocaine from Maholias because of her preferable prices. When Diane subsequently visited Maholias seeking a kilogram of the drug, Maholias first expressed concern over selling to Nelson's customer but, with Diane's assurances, agreed and quoted a price. A short time later, Jaime visited Florida and returned, informing Diane that he had consummated the transaction with the defendant.

The record discloses ample evidence of Maholias's significant and prolonged connections to the Blas organization's couriers, suppliers, and dealers, and clearly supports the jury's finding that Maholias knew of an agreement among the Blas brothers and their associates to distribute cocaine. This court has repeatedly recognized that "it is proper to view the type of conspiracy charged here—an ongoing drug distribution conspiracy involving core members who buy from and sell to various suppliers and dealers who may change over time—as a single conspiracy rather than a series of smaller separate conspiracies." *United States v. Sophie*, 900 F.2d 1064, 1081 (7th Cir.), *cert. denied*, 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). Furthermore, "[a] single conspiracy exists '[i]f there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy.'" *Paiz*, 905 F.2d at 1020 (citations omitted).

That Maholias intended to associate herself with this criminal conduct is easily inferred from Baranyk's testimony that she asked Luis in 1987 why he no longer purchased cocaine from her, from Garcia's testimony that he bought drugs from Zabala, whom Maholias supplied, as well as from Diane's testimony of her negotiations with Maholias. Indeed, the jury could reasonably believe that evidence of Maholias's offer to sell cocaine at a lower price than Nelson charged evinced an interest in doing future deals with Diane and Jaime, thereby furthering the object of the conspiracy.

Conceding that she "can be said to have engaged in the delivery of cocaine to Diane and Jaime Blas on a single occasion," and "may be found to have delivered cocaine to Luis Blas and Georgie Garcia," Brief for Appellant at 15–16, Maholias nonetheless insists that she "was in competition with every other supplier Jaime and Diane Blas had." *Id.* at 18. As she sees it, "the record establishes that there was a competitive relationship existing between Nelson Blas and the defendant.... This competition gave rise to an argument over 'territory'—customers." Reply Brief for Appellant at 5. Competition for customers, the defendant concludes, makes the finding of a single large conspiracy impossible.

To buttress her argument, Maholias points to Diane's testimony that the defen-

dant's prices were lower than Nelson's prices, that Maholias was initially reluctant to deal with Nelson's customer, and that Nelson and Maholias argued over the sale. Although unmentioned by the defendant, there is also Monte Moralez's testimony that Nelson was upset with Luis for purchasing less expensive cocaine from Maholias.

We begin by pointing out that evidence of direct competition between Maholias and Nelson is slight. First, there is no evidence of competition for George Garcia, who distributed cocaine for both Maholias and Nelson. Moreover, Maholias's momentary hesitation to sell cocaine to Diane—in addition to revealing her knowledge that Diane and Jaime were Nelson's customers—is at least as suggestive of a cartel in which two suppliers have allocated customers as it is of vigorous competition. On this basis, the jury was entitled to find that the defendant dealt in conjunction, rather than in competition, with Nelson.

However, even assuming the existence of some competition between Maholias and Nelson for certain customers, this evidence does not require us to find a variance in this case. Conspirators who distribute drugs often sell in parallel strands rather than in links essential to one another. *United States v. Whaley*, 830 F.2d at 1475. *See also United States v. Cerro*, 775 F.2d 908, 914 (7th Cir.1985). The distributors for whom the defendant and Nelson ostensibly competed were themselves undisputed members of the Blas conspiracy; indeed, Jaime and his brothers formed the core of the conspiracy. It is possible for two drug suppliers to join an agreement to distribute drugs and, because their operations are not indispensable to one another, compete for customers who are also shown to be members of the conspiracy. *See United States v. Tramunti*, 513 F.2d 1087, 1106 (2d Cir.) (while evidence of narcotics sales by two organizations to a common distributor indicated two spheres of operation in the conspiracy that was established, there was sufficient proof of mutual dependence and assistance to warrant treatment of the two spheres as one general business venture),

*cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

Thus, even if certain evidence suggests that the defendant and Nelson competed for Blas distributors, Maholias's conviction will stand if there is sufficient evidence showing she joined the agreement to distribute cocaine alleged by the government. What we have said in the context of sentencing in conspiracy cases applies here:

[T]he more important consideration is not whether a particular defendant can be labelled a competitor of other defendants, but instead is whether the defendant demonstrated a substantial level of commitment to the conspiracy, either by engaging in a consistent series of smaller transactions throughout the life of the conspiracy, or by engaging in one substantial transaction....

*United States v. Edwards*, 945 F.2d 1387, 1393 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

As discussed above, the series of transactions involving Maholias and different members of the Blas organization is sufficient evidence from which the jury could infer her substantial commitment to the conspiracy charged. In addition to the one kilogram transaction involving Diane and Jaime, there is Baranyk's testimony linking Maholias to Luis as early as the spring of 1987. Also, George Garcia, a distributor for Raphael, Luis, and then Nelson, testified that over a period of several months he placed orders for cocaine with Maria Zabala that were filled by Maholias, and that Maholias told him she had purchased cocaine from Luis.

Evidence of high transactions costs among a group ordinarily counsels against a finding of conspiracy between its members. *Townsend*, 924 F.2d at 1395. The testimony of Baranyk and Garcia, however, does not demonstrate that transactions costs between the defendant and other members of the Blas ring were particularly high. Rather, the evidence suggests a cooperative relationship among the parties that facilitated achievement of the goal of distributing cocaine. This is not a case of

anonymous market transactions, but a concatenation of narcotics sales as part of a larger distribution scheme. We find substantial evidence from which the jury could reasonably infer the existence of a single conspiracy to distribute cocaine of which the defendant was a member.

■ This conclusion is not disturbed by Maholias's claim that the jury determined that she and her co-defendant, Frederick Grace, were involved in separate conspiracies. As part of the verdict, the district court asked the jury to make findings as to the quantity of cocaine each defendant was individually responsible for distributing. For Maholias, that quantity was one kilogram of cocaine; for Grace, more than five kilograms. Based on the advisory verdict, Maholias argues that the jury must have found her guilty only of the one kilogram transaction involving Diane and Jaime Blas. Consequently, the jury's verdict was based on a separate, smaller conspiracy rather than the conspiracy charged in the indictment.

This argument does not wash. "This court has held consistently that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense." *United States v. Trujillo*, 959 F.2d 1377, 1381 (7th Cir.), *modified on other grounds* (April 20, 1992), *and cert. denied*, —— U.S. ——, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992). In particular, "[t]he quantity of the controlled substance is not an essential element of the crimes proscribed under sections 841(a)(1) and 846; rather, it is a sentencing issue to be raised after proof of a defendant's underlying guilt." *United States v. McNeese*, 901 F.2d 585, 600–01 (7th Cir.1990). Thus, the jury's findings as to the quantity of cocaine proven at trial against Maholias is irrelevant to the question of her participation in a single conspiracy.

### B. *Co-conspirator Hearsay*

In response to the jury's finding that she was a member of the Blas conspiracy, Maholias complains that the district court erred by admitting portions of Baranyk's testimony relating to her out-of-court state-

ments. Likewise, Maholias challenges the admissibility of Diane's testimony concerning Jaime's statements upon returning from Florida with a kilogram of cocaine. Without this testimony, the government presumably would be unable to prove Maholias's participation in the conspiracy.

■ In regard to Baranyk's testimony, "[c]o-conspirator testimony about the words and deeds of a defendant are not hearsay; the words and deeds of the defendant, while themselves out-of-court statements, are admissions, and because the testimony is offered in court, the statements of the co-conspirator are not hearsay either." *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992).

Diane Blas, on the other hand, testified to what her husband told her after he returned from Florida. Because this testimony concerns out-of-court statements made by a co-conspirator of the defendant, it implicates the hearsay rule. *See id.*

■ At the outset, we note, and the defendant concedes, that counsel for the defendant failed to object to the admission of Diane's testimony at trial. Failure to raise an issue before the district court results in waiver of that issue on appeal. *United States v. Livingston*, 936 F.2d 333, 335 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 787 (1992). Consequently, Maholias can argue only that the admission of Diane's testimony constitutes plain error, that is, error "of such a great magnitude that it probably changed the outcome of the trial." *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987). We reverse for plain error only when convinced that it is necessary in order to avert an actual miscarriage of justice. *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).

■ Under Federal Rule of Evidence 801(d)(2)(E), "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hear-

say. To admit a witness's statement under this Rule, the government must demonstrate, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the declarant and defendant were members of the conspiracy, and (3) the statement was made in furtherance of the conspiracy. *United States v. Romo*, 914 F.2d 889, 896 (7th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991). Moreover, "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

■ The existence of a conspiracy involving members of the Blas family and others is not seriously challenged. Evidence of an agreement to distribute cocaine came from participants in the scheme. Baranyk and Moralez testified that they transported cocaine from Florida to Milwaukee at the behest of Nelson and Luis. In Milwaukee, Diane and Jaime packaged and sold cocaine supplied by Nelson and Luis. George Garcia sold cocaine supplied by Raphael, Luis, Maholias, and Nelson. There was sufficient evidence at trial demonstrating the existence of a conspiracy at the time of Jaime's statement to Diane that he had purchased cocaine from Maholias.

Furthermore, Jaime's statement to Diane, made after Maholias had agreed to supply the drug and quoted a price to Diane, is probative of both Jaime's and Maholias's membership in the conspiracy, *see id.* at 180, 107 S.Ct. at 2781, and clearly furthered it. We have little difficulty concluding that the district court's admission of Jaime's statement to Diane was not plain error.

C. *Evidence of Similar Acts*

Maholias also contends the district court committed reversible error by admitting, over counsel's objections, the testimony of government witnesses Mario Stein and Wayne Hagenkord. Both men testified at trial to cocaine transactions they conducted with the defendant. According to Maholias, this evidence should have been excluded because it fails to establish the witnesses' relationship to the Blas drug ring and is unduly prejudicial.

Stein testified that in mid–1985 he delivered two kilograms of cocaine to Maholias in Milwaukee. Approximately one month later, he delivered another kilogram to the defendant. On both occasions, Stein acted under the direction of Armelio de la Cruz, who lived in Miami and furnished cocaine to one of Nelson and Luis Blas' initial Milwaukee suppliers. The district court initially admitted Stein's testimony as substantive evidence of the existence of the Blas conspiracy, later adding that the testimony could be received alternatively under Federal Rule of Evidence 404(b) as evidence of the defendant's intent to distribute. This Rule provides that evidence of other crimes, wrongs, or acts is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Hagenkord testified that on approximately six occasions in 1985 he purchased one ounce quantities of cocaine from Maholias and her husband at their residence in Milwaukee. The district court admitted this testimony pursuant to Rule 404(b) only.

■ We traditionally accord special deference to the evidentiary rulings of the trial court. *United States v. Stevenson*, 942 F.2d 1111, 1117 (7th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 596, 116 L.Ed.2d 620 (1991). Accordingly, we review the district court's admission of evidence only to determine whether, by admitting the evidence, the court abused its discretion. *Id.* "The issue before us is not whether we would have admitted the challenged evidence, but whether the district court offered a principled basis for its decision." *United States v. York*, 933 F.2d 1343, 1348 (7th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991).

■ Stein's deliveries to Maholias took place in mid–1985. The indictment, on the other hand, dates the conspiracy from on or about January 1, 1986, to on or about September 30, 1989. More importantly, the evidentiary link between Maholias and de la Cruz is a rather tenuous one. Other than testimony that Stein's source, de la

Cruz, also supplied individuals who, in turn, supplied Nelson and Luis Blas, the government presented no evidence connecting Maholias to the Blas conspiracy as early as mid–1985.

Nevertheless, at the close of the evidence the district court instructed the jury that the testimony concerning Maholias's conduct prior to the time period alleged in the indictment could be considered as evidence only of her intent to distribute cocaine.[3] This limiting instruction delineates the proper use of such testimony under Rule 404(b) and cured any defect in initially admitting Stein's testimony as substantive evidence of the conspiracy.

█ Accordingly, Stein's testimony was properly admitted under Rule 404(b) as evidence of the defendant's intent to distribute cocaine. Conspiracy to distribute is a specific intent crime; that is, the government must prove that the defendant conspired to distribute, with the intent to distribute, a controlled substance. *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). When a crime requires the government to prove specific intent,

> we have held that, because it is a material element to be proved by the government, it is necessarily in issue and the government may submit evidence of other acts in an attempt to establish the matter in its case-in-chief, assuming the other requirements of Rules 404(b) and 403 [,concerning the danger of unfair prejudice to the defendant,] are satisfied."

*United States v. Shackleford*, 738 F.2d 776, 781 (7th Cir.1984).

█ This circuit uses a four-part test to determine whether evidence of acts other than those charged are admissible. Prior to admitting evidence under Rule 404(b), the district court must determine that (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Stevenson*, 942 F.2d at 1117.

█ Applying this test to the facts of this case, we find Maholias has failed to demonstrate that the district court committed a clear abuse of discretion requiring reversal of her conviction. That on two occasions Maholias bought quantities of cocaine not ordinarily used for personal consumption is probative of her intent to distribute the drug. Intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use. *See United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991) ("Proof of possession of substantial amounts of narcotics supports an inference that the possessor intended to distribute the drugs rather than to retain them for personal use."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992). *See also United States v. Saunders*, 973 F.2d 1354, 1360 (7th Cir.1992) (13 ounces of cocaine, packaged in individual one ounce packets, held to support inference of intent to distribute); *United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir.) (3.5 grams of cocaine, found in individual packets, with loaded pistol, held to be a distributable amount), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

█ The Stein transactions are sufficiently similar to evidence, presented at

---

**3.** The judge charged:
Also, the defendants in this case are not on trial for any acts or conduct that do not relate directly to the conspiracy charged against them. For example, evidence has been received regarding other conduct of the defendant Maria Rodriguez for which she is not on trial. Any evidence received during the trial which relates to the conduct of the defendant, of a defendant either before the conspiracy is alleged to have started or after the conspiracy is alleged to have ended may be considered by the jury insofar as it may have a bearing on your consideration of the question of whether or not the defendant had the specific intent to violate the law by committing the crime charged in the indictment. Evidence of conduct before the conspiracy started and after it ended may only be considered by you for this very limited purpose.

trial, that Maholias purchased cocaine for redistribution from Luis Blas. Moreover, these transactions cannot be discounted as too remote in time, occurring as they did within three years of the defendant's dealings with George Garcia and Diane Blas. *Cf. United States v. Harrod,* 856 F.2d 996, 1002 (7th Cir.1988) (five-year old similar acts admissible under Rule 404(b)); *United States v. Chaimson,* 760 F.2d 798, 807 (7th Cir.1985) (same).

Stein testified that de la Cruz asked him to make deliveries to a woman named Maria and showed him where she lived in Milwaukee. When considered with Stein's description of the deliveries and his in-court identification of the defendant, this evidence adequately supports a jury finding that Maholias received cocaine from Stein. Finally, as noted, the district court gave a proper instruction limiting the use of the testimony, thus any untoward reflection on Maholias's character was incidental to the proof of her intent to distribute cocaine. *See United States v. Torres,* 977 F.2d 321, 329 (7th Cir.1992). In the end, Stein's testimony was hardly the linchpin of the government's case; there is abundant evidence in the record, considered independently of the Stein transactions, demonstrating the defendant's participation in the conspiracy. We therefore conclude the probative value of Stein's testimony is not substantially outweighed by the possibility of unfair prejudice to the defendant.

For essentially the same reasons, we hold that, pursuant to Rule 404(b), the district court properly admitted Hagenkord's testimony that he purchased cocaine from Maholias on approximately six occasions. These transactions occurred during roughly the same period of time as the Stein deliveries and, needless to say, involved conduct inherent in the charged offense.

### III.

Based on the foregoing, the conviction of Maria Maholias is AFFIRMED.