**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Flakes KELLUM and Lynetta P. Durr, Defendants–Appellants.**

Nos. 93–2937 & 93–3344.

United States Court of Appeals, Seventh Circuit.

Argued * May 12, 1994.

Decided Dec. 19, 1994.

* Appeal No. 93–2937 was submitted for decision     without argument.

Andrew B. Baker, Jr., Asst. U.S. Atty. (submitted), Dyer, IN, for U.S.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, for Flakes Kellum.

Allen E. Shoenberger, Sarah Ellis, law student, Chicago, IL, for Lynetta P. Durr.

Before BAUER, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

A federal grand jury returned a thirty-nine count indictment against Flakes Kellum, Lynetta P. Durr and thirteen others charging, among other things, a conspiracy to distribute cocaine and heroin in Gary, Indiana in violation of 21 U.S.C. § 846. Defendant Durr was convicted by a jury of the conspiracy count, and was sentenced to 21 months of imprisonment to be followed by four years of supervised release. Defendant Kellum pleaded guilty to the conspiracy count, and was sentenced to 87 months in prison to be followed by three years of supervised release.

Defendant Durr appeals her conviction, challenging the sufficiency of the evidence, the effectiveness of her trial counsel, and the admission of acts which occurred before the date charged in the conspiracy count of the indictment. Kellum's court-appointed counsel has filed a motion to withdraw from representing Kellum, claiming that any appeal would be frivolous. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We affirm defendant Durr's conviction, grant the *Anders* motion filed by Kellum's court-appointed counsel to withdraw as the attorney of record, and dismiss Kellum's appeal as frivolous.

## I. Background

Lee Andrew Edwards operated a drug distribution ring in Gary, Indiana. He supplied cocaine and heroin to drug dealers such as defendant Kellum as well as fronting drugs to street level dealers. Edwards also sold drugs from his home and other locations in Gary and had several people working for him including his brother James Edwards, Gwendolyn Campbell, and James Davis, a.k.a.

"Little James." When people called to place orders for drugs, the person answering the telephone would relay the order to Edwards, who in turn would decide how to handle the transaction. On occasion, the drug customer would come to Edwards' residence to pick up the drugs, and at other times Edwards would have the drugs delivered to the customer. When it was inconvenient for Edwards to deal drugs, Edwards would refer the caller to defendant Kellum.

Defendant Durr, a drug user, was Edwards' live-in girlfriend from 1979 to approximately 1985. She assisted Edwards with his drug business, packing drugs, keeping records, and selling drugs for Edwards from his residence at 235 Marshall, in Gary, Indiana. She also sold drugs for him from at least two other locations in Gary, Indiana with Gwendolyn Campbell, who also worked for Edwards from 1983 to 1988. Apparently, Durr's relationship with Edwards terminated in 1985 when Edwards met Lorri Edwards, whom he later married. Lorri Edwards, a drug user, also helped Edwards with his drug business. Lee Edwards and Lorri Edwards divided their time between Lee Edwards' two homes at 460 Taft Place and 1522 Taft Street in Gary, Indiana.

In 1990, the FBI obtained a court order to wiretap Lee Edwards' telephones at 1522 Taft Street and 460 Taft Place. The wiretap authorization did not name defendant Durr as a target of the investigation. On August 18, 1990, Durr's telephone conversation with Lee Edwards was intercepted on the wiretap:

> Durr: Lee?
>
> Edwards: What?
>
> Durr: I don't mean to bother you but could I get the same I got yesterday, three hundred girl and a dip of boy?
>
> Edwards: Yeah, maybe in about, uh, twenty minutes because that, you know . . .

Trial testimony and other evidence indicated that "three hundred girl" was $300 worth of cocaine, and a "dip of boy" meant a table spoon of brown heroin which was sold at

approximately $270.[1] On September 13, 1990, Durr again called Edwards and ordered "eighty girl and twenty boy." Durr instructed Edwards to put an "X" on the heroin package and not to mark anything on the cocaine package.

Another telephone call was intercepted on October 5, 1990 at 460 Taft Place. A woman identified as Elaine called Lorri Edwards and asked for "a fifty." Lorri Edwards told Elaine that Durr would meet her at Fifth and Taft. After Elaine expressed reluctance to meet with Durr, Durr came to the phone and explained that Lee Edwards did not want anyone coming his house and that she would deliver the drugs to Elaine in thirty minutes at Fifth and Taft.

On October 11, 1990, the FBI and DEA agents executed a search warrant for Lee Edwards' residence at 460 Taft Place and arrested Edwards. Although Lorri Edwards was present, she was not arrested. Later that day, a call from Durr to Lorri Edwards at 460 Taft Place was intercepted by the wiretap. Lorri reported that the FBI and the DEA had been at The Black Horseman Liquor Store owned by Edwards that same day and at Flakes' house, apparently referring to defendant Flakes Kellum's residence. Durr told Lorri that she believed "Little James" was responsible for the raid. Durr also stated that she had spoken to a Robert Lewis after the raid who advised that if Lorri had any money in the house to "get it out."

Durr was convicted by a jury of the conspiracy count of the indictment which charged that "[f]rom at least in or about January, 1986, through in or about October, 1990, the exact dates being unknown to the Grand Jury," Durr and fourteen other named defendants conspired with each other to knowingly and intentionally distribute and possess with the intent to distribute heroin and cocaine. Although Durr was initially charged in Count 30 of using a communica-

tion facility in a drug trafficking crime, the prosecution dismissed that count after the close of its case due to an error in the indictment of the date of the telephone call.

Defendant Kellum entered a plea of guilty to the conspiracy count in exchange for the dismissal of four counts of using a communication facility to facilitate the conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 843(b). The district court gave him a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, and sentenced him to a prison term of 87 months, which was the minimum sentence in the applicable guideline range.

## II. Analysis

### A. Defendant Durr

#### a. Sufficiency of the Evidence

■ Durr contends on appeal that the evidence was insufficient to prove that she participated in a conspiracy to distribute a controlled substance. She argues that the evidence established no more than a mere buyer-seller relationship between herself and Lee Edwards. *See United States v. Lechuga,* 994 F.2d 346, 349–50 (7th Cir.) (en banc), *cert. denied,* — U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

■ When reviewing a conviction for sufficiency of the evidence, we must consider the evidence and the accompanying inferences in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We will reverse "only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Garcia,* 35 F.3d 1125, 1128 (7th Cir.1994) (quoting *United States v. Gutierrez,* 978 F.2d 1463, 1468–69 (7th Cir.1992)); *see also Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

---

1. This court has frequently acknowledged that drug dealers often use "code words" in narcotic transactions in an attempt to conceal their criminal conduct. These "code words," when considered in isolation, might seem unclear or almost nonsensical. The jury therefore must analyze them in the context of the totality of the evidence in order to understand their true meaning. *See*

*United States v. Garcia,* 35 F.3d 1125, 1127 n. 3 (7th Cir.1994); *United States v. Olson,* 978 F.2d 1472, 1479 n. 6 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174, 175 (1993); *United States v. Martinez,* 937 F.2d 299, 306 n. 5 (7th Cir.1991); *United States v. Vega,* 860 F.2d 779, 795 (7th Cir.1988).

We will not reweigh the evidence or re-evaluate the credibility of witnesses. *United States v. Dortch*, 5 F.3d 1056, 1065 (7th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994).

A conspiracy is "a confederation of two or more persons formed for the purpose of committing by their joint efforts, a criminal act." *United States v. Campbell*, 985 F.2d 341, 344 (7th Cir.1993). To prove that a defendant was a member of the conspiracy, "the Government must demonstrate a participatory link between the conspiracy and the defendant;" it must establish that "the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose." *Id.* at 345. Further, "when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, substantial evidence should be the test rather than slight evidence or slight connection." *United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir.1990). The government's evidence, however, can be entirely circumstantial. *United States v. Pazos*, 993 F.2d 136, 139 (7th Cir. 1993); *Durrive*, 902 F.2d at 1225; *United States v. Vega*, 860 F.2d 779, 793 (7th Cir. 1988) ("[i]t is perfectly legitimate to prove a conspiracy by circumstantial evidence" because "[b]y its very nature, a conspiracy is conceived and carried out clandestinely, and direct evidence of the crime is rarely available") (quoting *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir.1988)). Moreover, in a drug conspiracy case, a buyer-seller relationship between two people cannot, by itself, establish a conspiracy. *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir.1994). However, "if the seller agrees to sell cocaine to the buyer, and the buyer agrees to buy, specifically for the purpose of having that buyer later distribute the cocaine to others ... a conspiracy does exist—there is an agreement beyond the mere sale for personal consumption." *Id.*

From our review, we are of the opinion that there is substantial evidence to support the jury's finding that Durr joined and participated in the conspiratorial scheme. The testimony of the government's witnesses, James Edwards and Gwendolyn Campbell, concerning Durr's prior relationship with Lee Edwards, tended to demonstrate that Durr was not a mere bystander but an active participant in the Lee Edwards conspiracy. Durr's involvement in the conspiracy was clearly established through the wiretap evidence as well as the other circumstantial and direct evidence received at trial. Beyond doubt her involvement in the drug enterprise far exceeds that of a person who might reasonably be classified as one participating in a mere buyer-seller relationship (personal consumption) as she urges upon us. In the first conversation, Durr ordered approximately $300 worth of cocaine and $275 worth of heroin. During the conversation, Durr indicated that the quantity ordered was the same as what she had purchased the previous day. That is, in two successive days, Durr obtained approximately $1,150 worth of drugs, grossly exceeding most of the sales revealed on the wiretap which ranged from $20 to $50. In fact, four of Durr's co-conspirators, all of whom were drug addicts, testified that their daily consumption ranged from $20 to at the most $300. Durr's purchase in one day doubled even the heaviest consumption of these co-conspirators, not to mention that she ordered the same amount in two successive days. Thus, a reasonable jury could infer that the drugs ordered by Durr during the recorded conversation were for distribution. *Cf. United States v. Maholias*, 985 F.2d 869, 879 (7th Cir.1993) ("Intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use"); *United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991) ("Proof of possession of substantial amounts of narcotics supports an inference that the possessor intended to distribute the drugs rather than to retain them for personal use"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992).

Moreover, in a subsequent conversation on September 13 during which Durr ordered $80 worth of cocaine and $20 worth of heroin, Durr instructed Lee Edwards to mark an "X" on the heroin package but not on the cocaine package. Durr's instruction supports the inference that the drugs were ordered for resale; the jury could conclude that Durr would not have instructed that the drugs be

marked if they were for her personal use. Thus, given the totality of the evidence reviewed we reject Durr's contention that the evidence proved no more than a buyer-seller relationship between her and Lee Edwards.

The intercepted telephone call on October 5, 1990 to Edwards' residence on 460 Taft Place further established Durr's participation in the conspiracy. During the conversation, Lorri Edwards told the prospective customer, identified as Elaine, that Durr would deliver the drugs to her at Fifth and Taft. Durr then came to the phone and explained to Elaine that Lee Edwards did not want anyone coming to the house. The conversation evidenced that Durr had knowledge of the operation and at the minimum, willingly played an active role in the distribution of drugs for Edwards' enterprise. Thus, the jury could infer that Durr's relationship with the co-conspirators was more than "mere association." *See United States v. Salazar*, 983 F.2d 778, 781 (7th Cir.1993).

Finally, Durr's intercepted telephone call to Lorri Edwards after the FBI and the DEA's raid of Edwards' house supports the verdict that Durr was an active participant in the conspiracy. Durr had information to inform Lorri that other distribution points were also raided by the federal agents. She told Lorri that she believed James Davis, a co-defendant, was responsible for the raids, and discussed Davis' and Edwards' prior drug dealings at a house Edwards used to own at Seventh and Virginia. Durr also warned Lorri to get any money out of the house. The government argues, and we agree, that it is reasonable to infer from this conversation that Durr was intimately involved in Edwards' conspiratorial enterprise. We therefore hold that the evidence, when considered in the light most favorable to the government, establishes beyond a reasonable doubt that Durr was a knowing participant in the conspiracy.

### b. Rule 404(b)

■ Durr next argues that the trial judge improperly admitted evidence of her prior bad acts. Specifically, she contends that the testimony of Gwendolyn Campbell and James Edwards concerning her drug distributions and association with Lee Edwards' operation prior to the date charged in the conspiracy count of the indictment only tended to demonstrate her propensity to commit the charged offense and was precisely the type of character evidence that Federal Rule of Evidence 404(b) sought to exclude. Gwendolyn Campbell had testified at trial that she worked with Durr in selling drugs for Edwards in the mid–1980s.[2] James Edwards, who was Lee Edwards' brother and a co-conspirator, testified as to Durr's role in Lee Edwards' operation while Durr was living with Edwards:

Q: Lynetta Durr?

A: She was a girlfriend, Lee's girlfriend, they lived together. I'm sure she knew what was going on. She helped run things.

Q: Helped run things, by help run things, what does that mean?

A: Well, you know, he was—the people that came to pick—came to pick up drugs to sell, she'd help get them together.

(Tr. 755).

Durr argues that James Edwards' testimony is particularly prejudicial because the circumstances that facilitated her alleged participation in the conspiracy have changed—she was no longer living with Lee Edwards by 1986 and thus, was not in the same position to "help" him with his drug business. Durr also faults the district court for failing to give a limiting instruction either at the time of the admission of the testimony or during the final instructions to the jury.

Because Durr did not make a timely objection to the admission of James Edwards' and Gwendolyn Campbell's testimony nor did she request the district court to give a limiting instruction, we will review the admission of the challenged testimony and the district court's failure to give a limiting instruction for plain error only. *United States v. Huels,*

---

**2.** Campbell did not give the specific dates of those drug sales, although Edwards' residence on 2nd and Marshall, one of the locations from which Durr sold drugs, was burned down sometime prior to 1986.

31 F.3d 476, 479–80 (7th Cir.1994); Fed. R.Crim.P. 52(b). "A plain error is one that results in an actual miscarriage of justice, which implies that the defendant probably would not have been convicted but for the erroneously admitted evidence." *United States v. Nolan,* 910 F.2d 1553, 1561 (7th Cir.1990) (citations omitted), *cert. denied,* 499 U.S. 942, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991). The defendant must demonstrate that the plain error affected his substantial rights as well as "the fairness, integrity, or public reputation of judicial proceedings." *United States v. McGill,* 32 F.3d 1138, 1142 (7th Cir.1994). We will reverse for plain error "only when convinced that it is necessary in order to avert an actual miscarriage of justice." *Maholias,* 985 F.2d at 877.

Durr has failed to demonstrate that the district court committed plain error in admitting evidence of her preconspiracy bad acts. Under Federal Rule of Evidence 404(b), evidence of other misconduct is not admissible to show that the defendant acted in conformity therewith, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[3] In this case, the evidence of Durr's prior relationship with Lee Edwards establishes a matter in issue other than her propensity to commit the crime charged; it demonstrates how Durr began to participate in the conspiracy and her knowledge of the conspiracy, as well as gives the background of the charged crime. In fact, this court has said that evidence of prior bad acts is admissible under Rule 404(b) "when those acts show the formation of the conspiracy or the prior relationship between conspirators." *United States v. Prevatte,* 16 F.3d 767, 776 (7th Cir.1994); *see also United States v. Sanders,* 979 F.2d 87, 90 (7th Cir.1992) (holding testi-

mony admissible as showing context of relationship with co-conspirator prior to conspiracy), —— U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1992); *United States v. Traitz,* 871 F.2d 368, 389 (3d Cir.) (holding uncharged acts of violence evidence of " 'the background of the charges, the parties' familiarity with one another and their concert of action' ") (quoting *United States v. O'Leary,* 739 F.2d 135, 136 (3d Cir.1984)), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). Campbell's testimony that Durr had assisted Edwards in distributing drugs at different locations was particularly relevant to establish the common scheme of the conspiracy. It also explained the wiretap conversation in which Durr agreed to deliver a drug order to Elaine for Edwards.

Moreover, conspiracy to distribute a controlled substance is a specific intent crime which means that "intent is automatically in issue, regardless of whether the Defendant has made intent an issue in the case." *United States v. Monzon,* 869 F.2d 338, 344 (7th Cir.), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *see also United States v. Manganellis,* 864 F.2d 528, 534 (7th Cir.1988). "The government must show that the defendant conspired to distribute, with *the intent to distribute* a controlled substance, in order to prove guilt." *Monzon,* 869 F.2d at 344 (emphasis in original); *see also Maholias,* 985 F.2d at 879. Testimony of Durr's prior drug distributions and involvement with Lee Edwards' drug distribution operation could be used to establish Durr's intent to distribute cocaine, therefore providing another ground for admission of the testimony under Rule 404(b). *See Maholias,* 985 F.2d at 879.

In any event, the evidence against Durr was overwhelming. As discussed before, the wiretap evidence, when viewed in the light

---

**3.** Where an objection was timely made, this court has used a four-part test to determine whether the challenged evidence is admissible under Rule 404(b). Evidence of prior bad acts is admissible if,

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is

sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*See United States v. Wilson,* 31 F.3d 510, 514 (7th Cir.1994); *United States v. Evans,* 27 F.3d 1219, 1232 (7th Cir.1994); *see also United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984), *as modified by Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

most favorable to the government, established that Durr was an active participant in the criminal scheme—she ordered drugs from Lee Edwards for resale and delivered drugs for Edwards. Thus, Durr has failed to establish that but for the admission of James Edwards' and Campbell's testimony, she probably would not have been convicted. *See United States v. Field,* 875 F.2d 130, 134–35 (7th Cir.1989) (where there is sufficient evidence, even without the admission of the challenged 404(b) evidence, to convict the defendant, no plain error has occurred). For the same reason, the district court's failure to give a limiting instruction as to the purpose of the testimony did not amount to plain error. Because of the overwhelming evidence against Durr, we are of the opinion that the district court's failure to give the limiting instruction did not have a probable impact on the jury's finding of guilt. *See Huels,* 31 F.3d at 479 ("district court's failure to give a limiting instruction was not plain error because the other evidence against [defendant] was so powerful").

Notably, counsel's failure to object to the admission of the testimony was a strategic decision. He stated at the close of the trial: "[t]here is testimony that predates 1986. I chose not to object to it and I chose to use it as a part of my defense." Indeed, counsel elicited the witnesses' pre–1986 testimony to support his defense theory that Durr was simply a drug addict in love with Lee Edwards. Under the circumstances, we refuse to find that there was an error such that it resulted in an actual miscarriage of justice. *See Hollenback v. United States,* 987 F.2d 1272, 1281 (7th Cir.1993) (where defense counsel made a tactical decision to waive any objections to evidence of defendant's drug use in order to support the defense theory that defendant purchased drugs from co-defendant only for personal and social consumption, there is no plain error in the admission of the 404(b) evidence); *United States v. Wynn,* 845 F.2d 1439, 1443 (7th Cir.1988) ("[w]here a defendant fails to object to the admission of [Rule 404(b) ] evidence at trial because of a tactical decision, we are even more reluctant to find plain error.").

### c. Ineffective Assistance of Counsel

Durr also asserts on appeal that she was denied her Sixth Amendment right to effective assistance of counsel. Durr contends that her trial counsel was ineffective by failing to object to the admission of James Edwards' preconspiracy testimony. According to Durr, counsel further magnified this error by failing to focus the jury's attention on events that occurred during the time period of the charged conspiracy, and by failing to make an objection when the prosecutor attempted to equate Durr's pre–1986 activities to that of Lorri Edwards' conspiratorial participation. The prosecution stated during the closing argument:

> Jimmie Edwards says that Lynetta Durr was Lee's woman back when Lee had the place on 2nd and Marshall and up until he met Lorri. And he says she did a little of everything. I suggest to you that she did the same as Lorri did for Lee Edwards later. She met the drug customers, she sold the drugs, kept track of the drugs, packaged them.

(Tr. 1080). Durr contends that the jury would not have found guilt had the prosecutor's statement been excluded.

In order to succeed on the ineffective assistance of counsel claim, Durr must show that her trial counsel's performance was deficient and that such deficient performance so prejudiced her defense as to render the result of her trial "fundamentally unfair or unreliable." *Lockhart v. Fretwell,* — U.S. —, — – —, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Kozinski,* 16 F.3d at 813 (citing *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070).

■ The government contends that Durr has waived the ineffective assistance claim by failing to raise it before the trial court. We have often cautioned that ineffective assistance of counsel claims are ordinarily best brought first in the district court, either in a motion for a new trial or in a collateral proceeding following conviction. *United*

States v. Morgano, 39 F.3d 1358, 1375 (7th Cir.1994); United States v. Levine, 5 F.3d 1100, 1108 (7th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994). The reason is that the trial court "has the opportunity to observe an attorney's conduct and serves as the best forum in which to develop a factual record relevant to an ineffective assistance claim." Morgano, 39 F.3d at 1375. Because evidence outside of the record will ordinarily be required to demonstrate the deficiency in counsel's performance, see Guinan v. United States, 6 F.3d 468, 471 (7th Cir.1993), the defendant faces an arduous task when raising the claim on direct appeal. United States v. Fish, 34 F.3d 488, 491 n. 1 (7th Cir.1994). However, while we are generally reluctant to consider claims of ineffective assistance of counsel when the claim has not been squarely presented to the district court, we will consider the issue if the challenge to counsel's assistance is sufficiently clear-cut and can be conclusively determined from the trial record.[4] Id.; United States v. Taglia, 922 F.2d 413, 418 (7th Cir.), cert. denied, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Durr's case presents such a situation.

■ As referred to before, counsel explained at the close of the trial that he made the tactical decision not to object to the pre-1986 testimony because he wanted to use it in the defense. Drawing from James Edwards' and Campbell's testimony, counsel presented the consistent theory that Durr's two worst weaknesses were her love for Lee Edwards and her drug addiction. Given that background, counsel continued the theory that Durr's telephone conversations intercepted during the period of the charged conspiracy only tended to show that Durr was merely associating with one whom she had a close relationship, and that Durr's drug orders were merely to satisfy her drug addiction. Counsel's decision to gain evidence for his defense at the cost of the admission of some incriminating evidence was a trial strategy, and we give a high degree of deference to counsel in making such choices. Strick-

land, 466 U.S. at 689, 104 S.Ct. at 2065; United States v. Jackson, 983 F.2d 757, 760–61 (7th Cir.1993); see also United States v. Limehouse, 950 F.2d 501, 504 (7th Cir.1991) ("[t]rial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim"), cert. denied, —— U.S. ——, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992). Similarly, counsel may have chosen not to request a limiting instruction to avoid focusing jury's attention on the unfavorable use that could be made of the evidence. Biggerstaff v. Clark, 999 F.2d 1153, 1155 (7th Cir. 1993). Considering all of the circumstances, we refuse to hold that counsel's tactical decision fell below the level of competent professional judgments, especially in light of the fact that counsel urged the jury to "consider the testimony of James Edwards and Gwendolyn Campbell with caution and great care," and vigorously attacked the credibility of those two witnesses. Moreover, as discussed before, Durr's prior activities in Edwards' drug business were admissible under Rule 404(b) to demonstrate the formation of conspiracy, background, common scheme, and intent. Thus, it is unlikely that objections to the pre-conspiracy testimony would have been sustained.

■ Similarly, with respect to counsel's failure to object to the prosecutor's comment that Durr had provided Edwards the same services in his drug business as did Lorri Edwards, we cannot say that it evidenced counsel's deficient performance. The prosecutor's statement was a fair comment on inferences to be drawn from the evidence. Jimmie Edwards had testified that while Durr was living with Lee Edwards, Durr "help[ed] package up drugs to be sold ... put drugs in capsules to sell and help[ed] count, keep records, so on and so forth." The testimony parallelled Lorri Edwards' testimony of her own involvement in the conspiracy. Moreover, Durr has failed to rebut the presumption that counsel's decision not to object to the prosecutor's comment was a reasonable tactical decision. The pros-

---

4. Indeed, this court has said that if nothing could be gained through evidentiary inquiry that is not already contained in the trial record, the defendant is required to raise the claim on direct

appeal or forfeit it. Guinan, 6 F.3d at 471; Taglia, 922 F.2d at 418; see also Dugan v. United States, 18 F.3d 460, 464 (7th Cir.1994).

ecutor's comment could have supported the defense theory that Durr was dependent on Lee Edwards, either because of her love for him and the two children she had with Edwards or because of her addiction to drugs.

■ In any event, even if references to Durr's pre-conspiracy activities would have been excluded had an objection been timely made, Durr has failed to demonstrate that counsel's performance prejudiced her. The evidence was sufficient to convict Durr, even without the pre-conspiracy testimony or the prosecutor's comment referring to Durr's pre-conspiracy activities. Thus, no reasonable probability exists that objecting to the pre-conspiracy testimony or the prosecutor's comment would have changed the outcome of the trial, much less rendered the trial result fundamentally unfair or unreliable. *See Lockhart*, —— U.S. at ——, 113 S.Ct. at 842. Because Durr has failed to satisfy both the performance and the prejudice prongs of the test, her ineffective assistance claim fails.

## B. Defendant Flakes Kellum

Defendant Kellum's court-appointed appellate counsel has filed a motion to withdraw and a supporting brief, claiming that any appeal would be frivolous. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *United States v. Edwards*, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Kellum received notice of his counsel's motion, and was given a copy of the *Anders* brief. Kellum, however, did not file a response.

■ Before granting counsel's motion, we must be satisfied that counsel has conscientiously examined the case. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. Only if we agree with counsel's conclusion that the potential issues on appeal are "groundless in light of legal principles and decisions" will we grant the motion to withdraw and dismiss the appeal. *United States v. Eggen*, 984 F.2d 848, 850 (7th Cir.1993) (citing *McCoy v.*

*Court of Appeals*, 486 U.S. 429, 436, 108 S.Ct. 1895, 1900, 100 L.Ed.2d 440 (1988)).

■ Appellate counsel raises three potential grounds for appeal: (1) whether there should have been a downward departure from the federal sentencing guidelines due to Kellum's age; (2) whether Kellum was denied the effective assistance of trial counsel; (3) whether Kellum's guilty plea was entered knowingly and voluntarily. After reviewing the entire record, we agree with counsel that none of the grounds is meritorious.

■ Under the guidelines, a defendant's age "is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," but may be a reason to depart downward "when the defendant is *elderly and infirm* and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1, p.s. (emphasis added). *See also* U.S.S.G. § 5H1.4, p.s. (physical condition is not ordinarily relevant in determining whether to downward depart). There is nothing about Kellum's age[5] (56 years old at the time of sentencing) or health that justifies a downward departure.[6] *Cf. United States v. Carey*, 895 F.2d 318, 324 (7th Cir.1990) (district court's reliance on defendant's age (62) and the fact that defendant had several serious operations as a result of a brain tumor to downward depart was unreasonable absent the more particularized findings and analysis required under U.S.S.G. § 5H1.1, p.s.). More importantly, Kellum did not move for a downward departure before the sentencing court, and thus, any challenge with respect to the issue would be waived on appeal. *See United States v. Kelly*, 14 F.3d 1169, 1177 (7th Cir.1994).

We also agree with Kellum's appellate counsel that a claim of ineffective trial counsel would be frivolous. It appears that Kel-

---

5. In fact, the district court had already taken into account Kellum's age when imposing the minimum sentence possible under the guidelines. The court stated:

The Court is imposing a sentence at the bottom end of the guideline range because of the defendant's age, the plea agreement entered into in this case between the defendant and the Government the [sic] because of the defendant's cooperation.

(Sentencing Tr. at 60).

6. Nothing, however, prevents Kellum from addressing any age or health issues to the parole commission.

lum's attorney in the district court proceedings did all he could with Kellum's case. Indeed, Kellum testified at the plea hearing that he was satisfied with trial counsel's performance. The plea bargain negotiated by trial counsel required Kellum to plead guilty to only the conspiracy count in exchange for the dismissal of four other counts of the indictment. The government agreed to recommend the minimum sentence within the guideline range and a reduction for acceptance of responsibility. The trial counsel may have determined that had Kellum proceeded to trial, it was likely that he would receive a longer prison sentence. Also, even after the district court granted Kellum a three-level reduction for acceptance of responsibility and imposed the minimum sentence possible within the guideline range, counsel vigorously pursued, though without success, a motion requesting the court not to take Kellum into custody immediately. *See* 18 U.S.C. § 3143(b). Nothing in the record suggests that Kellum's attorney rendered ineffective assistance in the proceedings before the district court.

With respect to the issue of whether Kellum's guilty plea was knowing and voluntary, this court has reviewed the transcript of the guilty plea hearing, and we are convinced that the district judge complied with Federal Rule of Criminal Procedure 11. The district court engaged in a thorough and careful colloquy with Kellum, reviewing the provisions of the plea agreement, and advising Kellum of his constitutional rights, the elements of the conspiracy charge against him as well as the consequences of the guilty plea including the possible minimum and maximum penalties. *See Garcia,* 35 F.3d at 1132; *see also United States v. Padilla,* 23 F.3d 1220, 1221 (7th Cir.1994). Additionally, Kellum agreed with the facts offered by the government and admitted committing the offense charged. Kellum, who has a tenth grade education, also stated that he had read the plea agreement and discussed his plea with his counsel, and that no one had threatened or attempted in any way to force him to plead guilty. Kellum entered the guilty plea voluntarily and knowingly, and thus, any argument challenging the guilty plea would be frivolous. *See United States v. Ellison,* 835 F.2d 687,

693 (7th Cir.1987) ("the only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and to rely on the defendant's sworn answer"); *see also United States v. Seavoy,* 995 F.2d 1414, 1420 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993).

## III. Conclusion

We AFFIRM the conviction of defendant Lynetta Durr. The motion filed by defendant Flakes Kellum's counsel to withdraw from appellate representation is granted and Kellum's appeal is DISMISSED as frivolous.