86 F.3d 1158
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles HICKEY, Defendant-Appellant.
 No. 96-1244.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 24, 1996.
Decided May 15, 1996.
 
 Before FAIRCHILD, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Defendant Charles Hickey pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 and was sentenced to 12 months' imprisonment. Hickey's court-appointed counsel, Patrick J. Stangl, filed a notice of appeal, and now seeks to withdraw because he considers this to be an appeal without merit or possibility of success. See Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). In his Anders brief, counsel asserts that the only challenges which Hickey could conceivably raise on appeal concern (1) the voluntariness of Hickey's guilty plea, and (2) the district court's failure to suppress inculpatory statements Hickey made to government agents. Under Circuit Rule 51(a), we notified Hickey of his attorney's motion, and Hickey did not respond. Because we are convinced that counsel engaged in a thorough search of the record and because we agree with counsel that any issue raised on appeal would be frivolous, we grant counsel's motion to withdraw, and dismiss the appeal. Penson v. Ohio, 488 U.S. 75, 80 (1988), United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993).
 
 BACKGROUND
 
 2
 In early 1995, the Bank of Juda in Juda, Wisconsin and Bank One Monroe in Monroe, Wisconsin referred a check kite scheme to the FBI. The banks suspected that assets were being improperly transferred between the account of Patrick Lea Medical Products, Inc. at the Bank of Juda and the account of Eugene Boss at Bank One Monroe. Special Agent Thomas Marquardt of the FBI began an investigation based on the referral. Agent Marquardt learned that defendant Charles Hickey, president of Patrick Lea Medical Products, controlled that company's checking account and was the son-in-law of Eugene Boss.
 
 
 3
 On June 5, 1995, Agent Marquardt and Special Agent Robert Timmel from the Secret Service went to the offices of Patrick Lea Medical Products in Monroe, Wisconsin to pay an unannounced visit on Hickey. The agents, who neither had a gun drawn nor was one visible, identified themselves as agents with the FBI and Secret Service and displayed their credentials. Speaking in conversational tones, they advised Hickey that they wanted to talk to him about a check kite scheme. Hickey invited them into the building, escorted them into a back room, and proceeded to answer questions about the suspected check kite during a one hour interview. Hickey never asked to terminate the interview and there were no reasons to advise Hickey that he could do so. At the conclusion of the interview, Hickey escorted the agents back to the front door, and shook hands with them before they left.
 
 
 4
 Later that month, a federal grand jury returned a one-count indictment, charging Hickey with knowingly executing and attempting to execute a scheme to defraud the Bank of Juda between August 1994 and January 1995. The indictment also alleged that Hickey's check kite scheme resulted in losses to Bank of Juda of approximately $126,000.[1] A summons was issued and Hickey was arraigned in August 1995.
 
 
 5
 In September 1995, Hickey moved to suppress his statements to the law enforcement agents on the ground that he was subjected to a custodial interrogation without being read his Miranda rights. An evidentiary hearing was held on this motion before Magistrate Judge Stephen L. Crocker. The magistrate judge found that Hickey had invited the agents into the building and furthermore was interviewed at a location he designated on the premises, and that Hickey's freedom during the interview was not restrained in degree equivalent to a formal arrest. The magistrate judge concluded that Hickey was not entitled to be advised of his Miranda rights. The district court accepted the magistrate judge's findings and conclusions, and denied Hickey's motion to suppress.
 
 
 6
 On November 4, 1995, two days before the trial was scheduled, Hickey agreed to plead guilty to the indictment. There was no written plea agreement, and the government agreed to recommend a two-level reduction in the sentencing guideline calculations for acceptance of responsibility and a sentence at the low end of the guideline range of imprisonment. The court subsequently conducted a Rule 11 colloquy, accepted Hickey's guilty plea, and ordered the preparation of a presentence investigation report.
 
 
 7
 At Hickey's sentencing hearing in January 1996, the district court found that Hickey had reviewed the presentence report with his attorney and had no objections. The court granted Hickey a two-level reduction for acceptance of responsibility and sentenced him to twelve months in prison, the lowest possible sentence within the applicable guideline range.
 
 DISCUSSION
 
 8
 We will grant an Anders motion only when we are satisfied that counsel has conscientiously examined the case, United States v. Kellum, 42 F.3d 1087, 1096 (7th Cir.1994) (citing Anders, 386 U.S. at 744), and that the potential issues on appeal are groundless in light of legal principles and rulings. Id. (citing Eggen, 984 F.2d at 850).
 
 
 9
 One of the potential issues raised by counsel in his Anders brief is whether the court violated Federal Rule of Criminal Procedure 11(d)[2] when it failed to inquire at the plea hearing whether Hickey's willingness to plead guilty resulted from prior discussions with the government. Although the court erred in not making this inquiry, errors in the plea colloquy are subject to harmless error review and should be disregarded if they do not affect a defendant's "substantial rights." Fed.R.Crim.P. 11(h); United States v. Cross, 57 F.3d 588, 591 (7th Cir.), cert. denied, 116 S.Ct. 406 (1995). Hickey admitted during questioning at the plea hearing that he had discussed the indictment and the plea agreement with trial counsel, that he understood the charges, that he was pleading guilty of his own free will, and that the government's version of his check kite scheme was correct. In light of the court's questioning as well as Hickey's responses during the plea colloquy, we are convinced that the court's technical violation of Rule 11(d) did not affect Hickey's substantial rights. Any non-compliance with Rule 11(d) was harmless. We agree with Hickey's counsel that an appeal on this ground would be frivolous.
 
 
 10
 The only other potential issue raised by counsel in the Anders brief is whether the denial of Hickey's motion to suppress was improper. This issue is not properly before the court. A voluntary plea of guilty forecloses appeal of all non-jurisdictional challenges to the constitutionality of the conviction. United States v. Markling, 7 F.3d 1309, 1312 (7th Cir.1993). Although an exception exists if the plea is conditioned on preserving certain issues for appeal, Fed.R.Crim.P. 11(a)(2), there is no evidence in this record that the parties contemplated such a conditional plea agreement.
 
 
 11
 Our independent review of the plea hearing transcript reveals that the district court followed the procedures outlined in Federal Rule of Criminal Procedure 11 to ensure that Hickey' guilty plea was knowingly and voluntarily given. The court determined that Hickey understood the nature of the charges brought against him, the factual basis for the plea, the maximum sentence that could be imposed, and the constitutional rights that would be waived by pleading guilty. Furthermore, Hickey stated that he was neither threatened nor coerced into pleading guilty. There is no potentially meritorious issue for appeal arising out of Hickey's guilty plea hearing.
 
 
 12
 Moreover, the transcript of Hickey's sentencing hearing fails to reveal an arguable basis for appeal. The transcript of the sentencing hearing demonstrates that Hickey was given the procedural protections provided in Federal Rule of Criminal Procedure 32. Defense counsel received the presentence report before the hearing, conversed with the defendant, and was given an opportunity to comment upon that report. The court addressed the defendant personally and determined that he had had an opportunity to review and discuss the report with his attorney. The judge determined that he was satisfied that the defendant was entering his plea knowingly and voluntarily. The court also gave Hickey an opportunity to make a statement in relation to his sentence (which Hickey declined), and ensured that Hickey was aware of his right to appeal the sentence.
 
 
 13
 Our review of Hickey's sentencing confirms that the district court's application of the guidelines was proper. The court set Hickey's base offense level at six, as instructed for a violation of 18 U.S.C. § 1344, U.S.S.G. § 2F1.1(a), and imposed a seven-level enhancement because there was a loss greater than $120,000. U.S.S.G. § 2F1.1(b)(1)(H). Because Hickey made numerous deposits between the two accounts over a five-month period, the court also imposed a two-level enhancement for engaging in more than minimal planning. U.S.S.G. § 2F1.1(b)(2)(A). After allowing a two-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a), the court determined Hickey's applicable offense level to be 13, with a criminal history of I. Hickey's twelve-month sentence represented the lowest possible sentence within the guideline range of 12-18 months. From our review of the record, we are convinced that the defendant cannot raise a meritorious issue on appeal concerning his sentencing.
 
 CONCLUSION
 
 14
 Based on our review of the record, we hold that there is no other basis upon which Hickey may successfully challenge his conviction or his sentence. We GRANT counsel's motion to withdraw from this appeal, and DISMISS the appeal as frivolous.
 
 
 
 [1]
 The indictment did not allege that any losses were incurred by Bank One Monroe
 
 
 [2]
 Rule 11(d) provides in relevant part:
 Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty ... without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between the attorney for the government and the defendant or the defendant or the defendant's attorney.