In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3675

United States of America,

Plaintiff-Appellee,

v.

Edgar C. Richmond, Jr.,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-47--Rudolph T. Randa, Judge.


Argued May 8, 2000--Decided July 24, 2000


  Before Posner, Chief Judge, and Bauer and Diane P.
Wood, Circuit Judges.

  Bauer, Circuit Judge.  On July 1, 1999, a jury
returned a verdict of guilty against Edgar
Richmond, Jr. on one count of conspiracy for
making false statements to obtain a firearm in
violation of Title 18, United States Code,
Section 371 and six counts of aiding and abetting
the making of a false statement to obtain a
firearm in violation of Title 18, United States
Code, Section 922(a)(6). Richmond was sentenced
to a 37-month term of imprisonment as to each
count, to run concurrently, followed by three
years of supervised release and a $100 special
assessment as to each count.

  Richmond purchased a total of nine guns from
Badger Guns, which were later recovered by police
from third parties. For each purchase, Richmond
would state on Federal Form 4473 that he was the
actual purchaser of the weapon when in fact he
was not. In a practice called straw purchasing,
he would buy the guns and then sell them to
individuals who could not legally purchase guns.
In this case, Richmond sold the guns to either
Charles Holley or Robert Mallette.

  Richmond raises two arguments on appeal. First,
that the district court abused its discretion in
denying his motion for a continuance based on
pretrial publicity. Richmond argues that the pre-

trial publicity inflamed and confused the jury making it impossible for him to receive a fair trial. Second, he argues that the district court abused its discretion in admitting evidence regarding the criminal circumstances surrounding the recovery of the guns.

The newspaper articles in the weeks preceding the trial focused on the problems of straw purchasing and recent school shootings. Approximately ten articles ran between May 9 and May 18 when Richmond filed a motion for a continuance based on pretrial publicity, which was denied on May 27, 1999. Specifically, the defendant refers to the May 16, 1999, article in the Milwaukee Journal Sentinel in which Mallette discussed the conspiracy. The article mentions that both would stand trial on June 1, 1999, on federal charges that they were straw buyers. The other articles only generally refer to the crackdown on straw purchasers and the need for more stringent prosecution and stricter laws. Neither Richmond nor the trial were mentioned in any of those articles.

We will only reverse a district court's denial of a motion to continue for an abuse of discretion. United States v. Depoister, 166 F.3d 292, 294 (7th Cir. 1997). An abuse occurs when the district judge makes a decision not within the "range of permissible options" afforded him under the given circumstances. Id.

Initially, the court denied the motion to continue finding that there was no evidence that the publicity was so inflammatory that an impartial jury could not be selected. Because of scheduling conflicts, the trial was ultimately postponed for four weeks to June 29, 1999. On the morning of the trial, Richmond renewed his motion for a continuance and again it was denied. In support of his motion, he presented an article which appeared in that morning's paper titled "State Pounces on Thwarted Weapons Sale." The article discusses another straw purchaser but at no time refers to Richmond or the trial. The court stated that:

"It's getting to the point where the emphasis in the media on weapons is such that articles in the paper are appearing just like articles on sexual assaults. And it's becoming so commonplace that I think the effect--any prejudicial affect is the same as reporting on sexual assaults, or armed robberies, or bank robberies, or something like that. It's becoming so commonplace."

The court conducted voir dire to ensure the selection of an impartial jury and to get any biases out in the open. The court then instructed

the jury on three separate occasions that they were only to consider the evidence presented in the courtroom.

The Supreme Court found in Irvin v. Dowd that to have an impartial jury does not mean the jurors must be completely ignorant of the issues and events of the case as long as they can put aside their impressions and render a fair verdict. 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The defendant must show that actual prejudice resulted from the pretrial publicity. Id. at 723. In this case, Richmond has failed to demonstrate that the pretrial publicity denied him a fair trial.

The district court conducted an extensive voir dire of the jurors and cautioned them several times on the importance of listening only to the evidence presented at trial. Further, only one article related to the specifics of this case; it mentioned Richmond, the charges against him, and statements from Mallette that were not so inflammatory as to have denied him a fair trial. Richmond speculates as to the overwhelming community prejudice to guns and gangs but offers no actual proof of it. Finally, the case was ultimately continued for a month despite the denial of the original motion. The district court acted within the range of permissible options under the circumstances and did not abuse its discretion.

Richmond next argues that the district court abused its discretion in admitting evidence that was irrelevant and highly prejudicial. Specifically, evidence regarding the recovery of the firearms and his association with gang members. Evidence is admissible to complete "the story of the crime on trial" or when it is "so blended or connected that it tends to prove any element of the charged crime." United States v. Akinrinade, 61 F.3d 1279, 1285 (7th Cir. 1995). In other words, evidence that is so intricately related to the conspiracy is admissible provided the probative value outweighs the prejudicial value. United States v. Zarnes, 33 F.3d 1454, 1468 (7th Cir. 1994).

While the district court allowed the government to present the circumstances under which the weapons were found, a detailed examination of those crime scenes was not allowed. The evidence established that the firearms purchased by Richmond were recovered at several crime scenes, including three associated with Charles Holley. One gun was found lying next to Holley's body after he had been shot to death. The fact that the firearms were found at several different crime scenes is probative of the fact that

Richmond was purchasing guns for others. Some of the guns were recovered by police shortly after they were bought, destroying Richmond's theory that they were stolen from him at one time. The circumstances of the recovery of the firearms linked the government's case together. It provided the jury with the complete story of the crime and explained the circumstances surrounding the relationships of the people involved in the conspiracy. The recovery of the weapons was so completely related to the conspiracy that the district court admitted the testimony.

Evidence of gang involvement must be considered carefully to avoid undue prejudice. United States v. Rodriguez, 925 F.2d 1049, 1053 (7th Cir. 1991). The court must consider whether the probative value of the evidence outweighs its prejudicial value. Cook v. Hoppin, 783 F.2d 684, 689 (7th Cir. 1986). Gang membership has been admissible in cases where the interplay between the people is central to proving the elements of the conspiracy. United States v. Thomas, 86 F.3d 647, 652 (7th Cir. 1996).

The testimony of Mallette, a co-conspirator, established the reasons Richmond purchased the guns. Richmond purchased handguns for Mallette and Holley, members of the Brothers of Struggle (BOS) street gang. Both were under 21 and could not buy handguns themselves. The BOS were involved in a war with the rival street gang, the 2-4's, and needed guns. While Richmond was not apart of the BOS, Mallette testified that he used the BOS handshake with Mallette's BOS friends. Evidence of their associations was necessary to explain that Richmond purchased the firearms to assist Mallette and Holley in their war against the 2-4's. The probative value of this evidence outweighs its prejudicial value and establishes an important link needed to establish the elements of the conspiracy.

Finally, the admission of the circumstances of the recovery of the guns and the gang connection was supported by an audio tape of Richmond indicating that he purchased guns for other people. The district court did not abuse its discretion in the admission of the above evidence.

Affirmed.