In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1391

United States of America,

Plaintiff-Appellee,

v.

William L. Curtis,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-CR-40026-002-JPG--J. Phil Gilbert, Judge.

Argued January 15, 2002--Decided February 11, 2002


  Before Flaum, Chief Judge, and Coffey and
Easterbrook, Circuit Judges.

  Flaum, Chief Judge.  On April 5, 2000,
William Curtis was convicted of
distribution of cocaine base and conspir
acy to distribute cocaine base in
violation of 21 U.S.C. sec.sec. 841(a)(1)
and 846. He filed a motion for a new
trial based on newly discovered evidence
which the district court denied. He now
appeals the denial of that motion, as
well as the district court's admission at
trial of testimony regarding his prior
drug dealing. For the reasons stated
herein, we affirm the decisions of the
district court.

I.  Background

  At trial, Robert Dueker, the FBI agent
involved in Curtis's investigation,
testified that between August 1998 and
May 5, 1999, the alleged conspiracy
period, as well as the previous year,
Curtis transported crack cocaine
fromChicago to Carbondale, Illinois, and
supplied several dealers in the area,
including Melissa Boyle, Anthony Hale,
Charles Curry, and Sarah Stephens.
Stephens testified that she assisted
Curtis with the distribution of crack
cocaine, and both traveled to Chicago to
buy narcotics from Curtis, and bought the
drugs while Curtis was in Carbondale.

Another government witness, Lester Barr, testified that he saw Curtis and Charles Curry make crack from powdered cocaine and split the finished product between them. Barr testified that he also traveled to Chicago to purchase cocaine from Curtis. Barr stated that he would drive around Carbondale with Curtis while Curtis went to a house from which he was paged to deliver crack cocaine. The government produced thirteen additional witnesses who testified that they had purchased crack cocaine from Curtis during the conspiracy dates.

The government also presented four witnesses for the purpose of testifying to Curtis's drug dealing activities, including specific controlled purchases, during 1997 and early 1998--before the time period of the charged conspiracy: Eldridge Hardley, David Morales, Derek Taylor, and Robert McConnell. Curtis never objected to the introduction of this evidence.

Agent Dueker, FBI agent Paula Parkinson, Boyle, and Hale testified that on May 5, 1999, Boyle and Hale, who lived together and who were apprehended for drug distribution, agreed to cooperate with the police and purchase crack cocaine from Curtis in a controlled buy. The police placed a tape recorder inside the living room of Boyle and Hale's residence, and conducted surveillance from the outside. Boyle paged Curtis who drove up to the house, went inside, sold drugs in the bathroom, and drove off. The law enforcement agents followed Curtis, who avoided their cars. A high-speed chase ensued, but the officers were unsuccessful in stopping Curtis that day. They returned to Boyle and Hale's house, where Hale handed them the crack cocaine that he had purchased from Curtis in the bathroom. Contemporaneously, a Carbondale police officer saw the car that Curtis had been driving in a parking lot and saw crack cocaine and a pager on the front seat. He had the car towed to a police lot where the evidence was inventoried. The police found Curtis's name on the car rental agreement in the glove compartment. The FBI arrested Curtis in November 1999.

On the first day of his trial, Curtis told the district court that there should be a tape from the May 5, 1999 controlled

buy. The government responded that the recorder was in a different room from the buy, and that the tape was blank. It informed the court that there was nothing, not even a preamble, on the May 5 tape. Agent Parkinson also testified that the FBI office in Springfield, Illinois, where the tape was sent, informed her that the tape placed in the recorder turned out to be blank. She stated that tape malfunctions are common. Curtis's trial lawyer stated that he believed the government's representation about the tape, and did not need to obtain it. Curtis, however, told the court that he did not believe that the tape was blank and requested that it be sent to him. The court replied that it would not delay the trial, but that the tape should be sent to him as soon aspossible and if, as he claimed, it turned out not to be blank, he could file a motion for a new trial based on newly discovered evidence. At the trial, Curtis's attorney used the absence of a tape recording of the transaction in his defense. Despite this argument, Curtis was convicted on all counts. He received the tape after the trial, and it was, as represented, blank. Nevertheless, he filed a motion for a new trial, arguing that the blank tape would have been material in his defense that no drug sale occurred on May 5, 1999, as there was no recording of it. The district court denied his motion, holding that he had met none of the necessary requirements to be granted a new trial.

II.  Discussion

   a.  "Other Acts" Evidence

   Curtis contends that the witnesses' testimony concerning only uncharged, pre-indictment activities should not have been admitted under Federal Rules of Evidence 403 and 404(b)./1 Curtis did not object to the admission of this testimony at trial. Therefore, we evaluate his claim that the testimony in question was inadmissible as prior bad act evidence and that unfair prejudice outweighed its probative value under a plain error standard. United States v. Krankel, 164 F.3d 1046, 1052 (7th Cir. 1998) ("When a defendant fails to timely and properly object at trial to the admission of evidence, the issue is

waived by the defendant absent a showing of plain error.") Under this standard, we would reverse the district court's admission of the evidence only if Curtis "probably would not have been convicted but for the erroneously admitted evidence." United States v. Kellum, 42 F.3d 1087, 1092 (7th Cir. 1994). Only if Curtis has shown that: 1) the evidence was wrongly admitted; and 2) the error likely changed the outcome of the trial, will we reverse. We find that he has met neither burden.

Although prior bad acts testimony is inappropriate when used to show that the defendant acted in conformity with such behavior, it is properly admitted if the evidence:

i) is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; ii) shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; iii) is sufficient to support a jury finding that the defendant committed the similar act; and iv) has probative value not substantially outweighed by the danger of unfair prejudice.

United States v. Green, 258 F.3d 683, 694 (7th Cir. 2001) (citing Untied States v. Williams, 238 F.3d 871, 874 (7th Cir. 2001); United States v. Moore, 115 F.3d 1348, 1354 (7th Cir. 1997)). Because Curtis failed to object at trial, the district judge was not on call to evaluate the evidence under the above standards. Curtis's claim is not waived altogether, however; because "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," Fed. R. Crim. P. 52(b), we will review the court's admission of the challenged testimony for plain error. Krankel, 164 F.3d at 1052. Under this standard of review, we find that Curtis has failed to show that the district court committed plain error in admitting the other act evidence.

The testimony in question meets all four prongs of the above-referenced test. First, conspiracy to distribute narcotics is, inherently, a specific intent crime. Therefore, the defendant's "intent is automatically in issue, regardless of

whether [he] has made intent an issue in the case." Kellum, 42 F.3d at 1093 (citing United States v. Monzon, 869 F.2d 338, 344 (7th Cir. 1989)); see also Green, 258 F.3d at 694 ("we have held on numerous occasions that when a defendant is charged with a specific intent crime . . . evidence of the defendant's prior drug transactions may be relevant to show knowledge and intent--purposes distinct from simply showing the defendant's propensity for drug dealing.") (citations omitted). Second, where the evidence regards a defendant's prior transactions of similar types of drugs, acts the year before the charged crime are close enough in time and similar enough to be relevant. Green, 258 F.3d at 694 (drug sales ending 14 months before the charged crime are relevant to the matter at issue); see also United States v. Ruiz, 178 F.3d 877, 880 (7th Cir. 1999) (two years not too long); United States v. Kreiser, 15 F.3d 635, 640 (7th Cir. 1994) (seven years not too long). Third, witnesses' testimony that they participated in drug transactions with the defendant or saw the defendant selling drugs is sufficient to support a jury finding that he did engage in that conduct. Green, 258 F.3d at 694 (citing United States v. Smith, 995 F.2d 662, 672 (7th Cir. 1993)). Fourth, we find that the evidence was not unfairly prejudicial. Curtis contends that the cumulative prejudicial effect of the four witnesses' testimony was unfair, considering the absence of a limiting instruction by the court. The defendant never requested a limiting instruction, however, or objected to the admission of the evidence at all; the court's failure to give such an instruction, therefore was not in error. The witnesses' testimony had probative value as to Curtis's intent; that value was not substantially outweighed by unfair prejudice.

We do not advance the position that, in a drug prosecution, any evidence of recent drug transactions is automatically admissible. To the contrary, evidence should be admitted only if it meets the four prongs of the above test. That is, it must be for the purpose of establishing a matter other than the propensity to commit the same crime, be similar and close in time, be sufficient to support a jury finding, and,

crucially, have probative value not substantially outweighed by unfair prejudice. The admission of prior bad acts evidence must be evaluated on a case-by-case basis. Because "almost any bad act evidence simultaneously condemns by besmirching character and by showing one or more [of the admissible purposes under Rule 404(b)]," United States v. Beasley, 809 F.2d 1273, 1279 (7th Cir. 1987), the rule must not be applied mechanically, but instead carefully considered under the given circumstances.

Even if Curtis could show that the admission of the prior acts evidence was erroneous, however, he has not met his burden of demonstrating that he probably would not have been convicted but for the testimony in question. When viewed in the light most favorable to the government, the evidence presented by Curtis's co-conspirators as well as law enforcement officers was more than sufficient to establish that Curtis was a participant in the conspiracy and distribution of crack cocaine. No plain error exists as to the admission of the testimony of the five witnesses in question.

b.  Newly Discovered Evidence

We review the district court's denial of Curtis's motion for a new trial for abuse of discretion. United States v. Furth, 36 F.3d 649 (7th Cir. 1994). That is, we ask if a reasonable person could agree with the decision of the district court. United States v. Hunt, 272 F.3d 488 (7th Cir. 2001). We find that one could. A court may grant a defendant a new trial based on newly discovered evidence if the defendant can show that such evidence 1) came to his knowledge only after trial; 2) could not have been discovered any sooner had due diligence been exercised; 3) is material--not merely impeaching or cumulative; and 4) probably would lead to an acquittal if a new trial were granted. United States v. Lopeztegui, 230 F.3d 1000, 1002 (7th Cir. 2000). The district court found that Curtis had met none of the above requirements and denied his motion for a new trial. This finding is not an abuse of discretion. Curtis, the government, the court, and the jury knew of the tape and knew that it was completely blank during the trial. Moreover, even had it been newly

discovered, it would not have been material to his defense. Curtis claims that it would show that the government, in explaining to the jury why it was not presenting a tape recording of the controlled purchase, was lying when it said that there was no recording because the transaction took place in another room--the completely blank tape (with no preamble) shows that no recording exists because of machine malfunction or erasure. If anything, this evidence is merely impeaching/2--not material to Curtis's defense. Whether the machine malfunctioned or not, the activity in the bathroom would not have been recorded. Curtis also contends that if the tape were not completely blank, it should have corroborated the government's version of events: that Hale and Boyle paged Curtis, and that Curtis arrived at their home. Just because the tape does not make the government's winning case even stronger does not mean that it helps Curtis's defense. It is not material at all. Because the tape is immaterial, and because the jury knew that it was blank-- the defense attorney used the fact that the government did not present any recorded corroboration of its version of events during his argument--it likely would not lead to Curtis's acquittal if a new trial were granted. The district court did not abuse its discretion in denying Curtis's motion for a new trial.

III.  Conclusion

   For the reasons stated above, we AFFIRM the decisions of the district court.

FOOTNOTES

/1 FRE 403 states that relevant evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." FRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show attention in conformity therewith. It may, however- er, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara- tion, plan, knowledge, identity, or absence of mistake or accident . . . ."

/2 If, in fact, the lack of preamble could have been used to impeach the government, Curtis had the information necessary to do so during the trial. He did not.