UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlan D. HODGES, Defendant–Appellant.

No. 02–1599.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 2002.

Decided Jan. 9, 2003.

Patty Merkamp Stemler (argued), Dept. of Justice Criminal Div., Appellate Section, Washington, DC, for Plaintiff-Appellee.

Renee E. Schooley (argued), Office of Federal Public Defender, East St. Louis, IL, for Defendant-Appellant.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Defendant Carlan D. Hodges of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and of receiving stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Following his conviction, Hodges filed a motion for a new trial based on newly discovered evidence, which the district court denied. The district court sentenced Hodges to 188 months' imprisonment followed by three years of supervised release and imposed a fine of $1,000 and a special assessment of $100.

While his direct appeal was pending, Hodges learned that the district court judge may have had *ex parte* communications with the jury. He then filed a second motion for a new trial, and we remanded the case for a ruling on the motion. The district court granted the motion without an evidentiary hearing; after a government appeal of that ruling, we reversed and remanded the matter for an evidentiary hearing. *United States v. Bishawi*, 272 F.3d 458 (7th Cir. 2001). After the hearing, the district court denied the motion for a new trial.

Hodges' instant appeal raises four issues: 1) whether the evidence was insufficient to support his convictions; 2) whether the district court abused its discretion by admitting evidence of his gang affiliation; 3) whether the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence; and 4) whether the district court clearly erred by imposing a sentence enhancement under § 3B1.4 of the U.S. Sentencing Guidelines Manual for using a minor to commit a crime. For the reasons set forth below, we affirm.

## BACKGROUND

On January 22, 1996, high school students Colby Thompson, Jeremy Midgett, and Matthew Dibble cut school to commit two robberies in the Marion, Illinois, area. Their intention was to take stolen items to Hodges' home so that he could fence them through connections in Chicago. Hodges had previously told Thompson, while Midgett was present, that he could unload stolen property through a connection he had in Chicago and that he could get the most money for guns. Alternatively, he proposed that he could exchange guns for drugs, which Hodges would then sell, giving the proceeds to Thompson, Dibble, and Midgett.

During one of the robberies, the three boys stole ten guns, a slug barrel for one of the guns, a Japanese ceremonial sword, small electronic items, and cassette tapes from the home of Gene Ruehmkorff. They loaded the items into their car and drove to Hodges' home where he and the three boys carried the stolen property into his apartment. Once inside, Hodges examined the guns and stated that he could sell the guns for as much as $700 or $800. After inspecting the guns, Hodges wiped them down and stored them under his bed and in a closet in his bedroom.

Several days after the robbery, Hodges and two men in a blue Chevy van drove to

the boys' high school, and Hodges informed Thompson that he needed money for a bus ticket to Chicago. In early February 1996, the same two men in the blue Chevy drove to Hodges' apartment and, with Thompson and Dibble, loaded the Ruehmkorff guns into the van. Hodges told the boys that the two men were taking the guns to Chicago to sell. Hodges never paid Thompson, Midgett, or Dibble.

A Chicago Housing Authority Police Tactical Gang Unit recovered four of Ruehmkorff's guns on February 8, 1996, and sent them back to the Marion police. In the spring of 1996, Hodges contacted Officer James Webb of the Marion sheriff's department, and the two met in June 1996. At that meeting, Hodges told Webb that he had seen the guns in the parking lot of his apartment and that Dibble was living with him at the time. Hodges claimed that Dibble told him the guns were stolen and that he asked Hodges to fence the guns, which Hodges denied agreeing to do. When Webb asked about his connection to Chicago, Hodges told Webb that he moved back to Chicago in March 1996 and was affiliated with a Chicago street gang known as the Black Stones or Black P Stones.

Approximately five or six months after the burglaries, police arrested Thompson and Midgett, who provided information about the thefts, including Hodges' role. Thompson and Midgett subsequently testified at Hodges' trial, but Dibble could not be located. Thompson testified that he committed the robberies and that he first met Hodges in November 1995. He further testified that he stole another gun on May 18, 1996, which he also brought to Hodges to sell, but eventually sold to a third party. Midgett testified that he met Hodges at least one month before the burglaries and that he and Thompson decided to steal guns and other items and take them to Hodges because Hodges claimed

he could fence them through connections in Chicago.

Thompson and Midgett also testified that the four guns recovered in Chicago resembled the ones they had stolen, and Officer Webb and Gene Ruehmkorff positively identified the guns as those stolen from Ruehmkorff's home. Webb further testified that the guns were recovered by a Chicago Housing Authority Police Tactical Gang Unit and that Hodges admitted his gang affiliation to Webb. During closing arguments, the prosecution also made a brief reference to Hodges' "gang buddies" to show how Hodges' admissions to Webb corroborated Thompson's and Midgett's testimony. Additional testimony was introduced that the guns functioned properly and that they traveled in interstate commerce to reach Illinois. While Hodges stipulated that he was convicted of a felony in 1991, he presented no further evidence at trial. A jury convicted him of being a felon in possession of four firearms and of receiving stolen firearms in violation of §§ 922 and 924.

After his conviction, Hodges' attorney learned that Hodges did move from Marion back to Chicago in early April 1996. Believing that this information, which was apparently new only to Hodges' attorney, put into doubt Thompson's testimony about a gun he took to Hodges' home in Marion in May 1996, Hodges filed a motion for a new trial. The district court denied the motion.

A sentencing hearing was held, at which time Hodges disputed a two-level increase in his base offense level pursuant to § 3B1.4 of the U.S. Sentencing Guidelines Manual for using a minor, Jeremy Midgett, to commit a crime. Hodges did not dispute that Midgett was a minor at the time of the robbery, but argued that it was Thompson who "used" Midgett. The government pointed to Midgett's role in help-

ing to carry the guns into Hodges' apartment as well as conversations between Hodges and Thompson while Midgett was present concerning Hodges' ability to fence stolen guns. The district court found that Hodges "used" Midgett to commit the crimes and increased Hodges' base offense level by two. This increase resulted in a sentence of 188 months in prison, followed by three years of supervised release, and a $1,000 fine and $100 special assessment. Following the procedural turns related to the district court judge's *ex parte* communications with the jury, this appeal ensued.

## ANALYSIS

### A. Sufficiency of the Evidence

■■■ We first discuss Hodges' argument that there was insufficient evidence to support his convictions by a jury beyond a reasonable doubt. We review this claim in a light most favorable to the government and will overturn a conviction only if no rational trier of fact could have found Hodges guilty beyond a reasonable doubt. *United States v. Emerson,* 128 F.3d 557, 560 (7th Cir.1997).

■■■ To convict Hodges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), the government must have proven beyond a reasonable doubt that: 1) Hodges had a prior felony conviction; 2) he possessed or received a firearm; and 3) the firearm traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1) (2002); *United States v. Garrett,* 903 F.2d 1105, 1110 (7th Cir.1990). To be convicted of receiving stolen firearms under 18 U.S.C. § 922(j), the government needed to prove beyond a reasonable doubt that: 1) Hodges received or possessed stolen firearms; 2) which moved or

were shipped in interstate commerce before or after being stolen; and 3) Hodges knew or had reasonable cause to believe that they were stolen. 18 U.S.C. § 922(j); *United States v. Buchmeier,* 255 F.3d 415, 421 (7th Cir.2001).

Hodges does not dispute that he was convicted of a felony in 1991, nor that the guns traveled in interstate commerce. Nor does he dispute that he knew the guns were stolen. So, the only issue with respect to the convictions is whether there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Hodges possessed or received the firearms in question.[1]

■■■ On the issue of Hodges' possession and receipt of the stolen guns, both Thompson and Midgett testified: 1) that they stole the guns and took them directly to Hodges' apartment; 2) that they carried them into his home with Hodges' help; 3) that he then inspected the guns and told the boys he could sell them for $700 or $800; and 4) that he wiped them down to remove his fingerprints and stored the guns in his bedroom. Hodges contends that Thompson's and Midgett's credibility is suspect because both boys have criminal pasts and because Midgett gave conflicting statements to the grand jury. Specifically, Hodges points to Midgett's trial testimony that Hodges helped carry the guns into his apartment, whereas before the grand jury Midgett said that only he, Thompson, and Dibble carried the guns into the apartment. The jury, however, is free to credit witnesses and resolve any inconsistencies in their testimony however it sees fit, and we will not disturb their credibility findings. *United States v. Hach,* 162 F.3d 937, 942 (7th Cir.1998).

---

**1.** Hodges was also convicted under § 924(a)(2), which provides for fines and/or imprisonment for violations of §§ 922(g) or (j). Consequently, we need only review his convictions under §§ 922(g) and (j) to affirm his § 924(a)(2) conviction.

Additionally, several witnesses, including Thompson, Midgett, Officer Webb, and Gene Ruehmkorff, identified the government's exhibits as the guns stolen from Ruehmkorff's home in January 1996. Ruehmkorff had provided the police with serial numbers for the guns after the robbery, which matched the guns in court. Hodges admitted to Webb that the three boys brought the stolen guns to his apartment, though he claimed he wanted nothing to do with them. Finally, the guns were recovered in Chicago by a police gang unit, and Hodges' connection to the Chicago street gang known as the Black Stones (or Black P Stones) was presented to the jury. This evidence merely corroborated Thompson's and Midgett's testimony that Hodges said he could sell the guns through connections in Chicago. There was more than enough evidence for a rational jury to find Hodges guilty beyond a reasonable doubt.

### B. Evidence of Hodges' Gang Affiliation

We turn next to Hodges' arguments concerning the admission of the evidence of his affiliation with a street gang in Chicago. Hodges objected to Officer Webb's testimony that the guns were recovered by a police tactical gang unit in Chicago, that Hodges admitted to Webb that he was affiliated with a gang, and the reference to Hodges' "gang buddies" by the government during closing arguments. Hodges argues that the evidence was irrelevant, that its prejudicial effect outweighed any probative value under Rule 403 of the Federal Rules of Evidence, and that it was improper Rule 404(b) evidence.

■ We review a district court's evidentiary rulings, including its Rule 403 determinations, for an abuse of discretion. *United States v. Thomas,* 86 F.3d 647, 652 (7th Cir.1996). The failure to timely and specifically object to evidence, however, limits our review to the plain error standard. *United States v. Harris,* 271 F.3d 690, 700 (7th Cir.2001). Under that standard, we will not reverse unless Hodges probably would not have been convicted but for the erroneously admitted evidence. *United States v. Curtis,* 280 F.3d 798, 801 (7th Cir.2002). Because objection was made only to the relevance of Webb's testimony that Hodges admitted he was involved with the gang, we will review its admission for an abuse of discretion. Any further review of the evidence concerning Hodges' gang affiliation, however, will be for plain error.

■ First, Webb's testimony that Hodges admitted to being involved with a Chicago gang was clearly relevant to the charges against Hodges. Thompson and Midgett testified that Hodges said he could sell guns through connections in Chicago, and four of the guns stolen in Marion were recovered several days later in Chicago by a police gang unit. Webb's testimony concerning Hodges' admitted gang affiliation simply corroborated Thompson's and Midgett's testimony. It demonstrated how Hodges' connections to people in Chicago who could fence the stolen property made it more probable that Hodges possessed the guns for that stated purpose. FED. R. EVID. 401. This evidence, therefore, was relevant, and the district court did not abuse its discretion in admitting the evidence. *See United States v. Richmond,* 222 F.3d 414, 417 (7th Cir.2000) (affirming admission of gang evidence as relevant and not unfairly prejudicial).

■ Admission of Webb's testimony that a police gang unit recovered the guns in Chicago as well as the prosecution's reference to Hodges' "gang buddies" in closing arguments does not amount to plain error. A single statement by Webb that the guns were recovered by a police gang unit further corroborated testimony

by Thompson and Midgett concerning Hodges' connections to a Chicago gang. There was no danger of unfair prejudice greater than the statement's probative value. *See* FED. R. EVID. 403. The prosecutor's statement during closing arguments, similarly, drew the above evidence together for the jury by pointing out how Hodges' admissions to Webb corroborated Thompson's and Midgett's testimony. This brief reference during closing arguments marked only the third mention of Hodges' gang connections, all of which were related to establishing his connections to Chicago and his ability to fence the stolen guns there.

Finally, Hodges argues for the first time that evidence of his gang affiliation was inadmissible under Rule 404(b) because it was evidence of other crimes, wrongs, or acts. *See* FED. R. EVID. 404(b). As this Court has noted, "[t]he admission of prior bad acts evidence must be evaluated on a case-by-case basis." *Curtis*, 280 F.3d at 802. Without any testimony of particular prior bad acts Hodges participated in as a gang member, we find that evidence of his mere affiliation with the gang does not fall under Rule 404(b). Even were we to consider this Rule 404(b) evidence, for which the government did not properly give notice, admission of the evidence does not amount to plain error in light of the rather overwhelming evidence supporting Hodges' guilt. *See United States v. Martin*, 287 F.3d 609, 614 (7th Cir.2002). That is to say, Hodges would likely still be convicted even without the evidence of his gang affiliation. *Curtis*, 280 F.3d at 801.

### C. Newly Discovered Evidence

We now consider Hodges' argument that his motion for a new trial should have been granted because his attorney learned after his conviction that Hodges had moved from Marion back to Chicago in early April 1996. This evidence, according to Hodges, is proof that Thompson lied when he testified that he continued to bring guns to Hodges to fence in May 1996. We review a denial of a motion for a new trial based upon newly discovered evidence for an abuse of discretion. *Curtis*, 280 F.3d at 803. A new trial is warranted only if Hodges can show that the new evidence: 1) came to his knowledge only after trial; 2) could not have been discovered any sooner using due diligence; 3) is material and not merely impeaching or cumulative; and 4) probably would lead to an acquittal in the event of a new trial. *Id.*

Hodges' motion fails every aspect of this test. To begin with, Hodges had to know well before trial that he had moved from Marion in early April 1996 and was not living there in May 1996. In fact, Officer Webb testified that Hodges told him he moved from Marion before May 1996. The jury heard this testimony and could see the contradiction in Thompson's testimony. As we stated above, we do not substitute our judgment for a jury in credibility determinations. *Hach*, 162 F.3d at 942. The district court did not abuse its discretion in denying Hodges' motion for a new trial.

### D. Sentence Enhancement for Use of a Minor to Commit a Crime

Lastly, we examine Hodges' argument that his base offense level should not have been increased by two levels as provided for in § 3B1.4 of the U.S. Sentencing Guidelines Manual because the district court erroneously concluded that he "used" a minor, Jeremy Midgett, to commit a crime. While we review the interpretation of § 3B1.4 *de novo*, the interaction between Hodges and Midgett is a question of fact reviewed for clear error. *United*

*States v. Ramsey*, 237 F.3d 853, 855 (7th Cir.2001).

 Section 3B1.4 provides for a two-level enhancement "[i]f the defendant used or attempted to use" a minor to commit the crime. U.S. SENTENCING GUIDELINES MANUAL § 3B1.4 (1996). Application Note 1 to § 3B1.4 further clarifies that "used or attempted to use" includes directing, commanding, *encouraging*, intimidating, counseling, training, procuring, recruiting, or soliciting. *Id.* (emphasis added). As this Court held in *United States v. Ramsey*, "use" requires the affirmative involvement of the minor in the crime. *Ramsey*, 237 F.3d at 859. Furthermore, use of a minor can be established "when the minor is a partner in the criminal offense . . . as well as when the minor's role is subordinate to that of the criminal defendant." *Id.* (citations omitted). The district court's interpretation of the meaning of "use" in § 3B1.4, therefore, was appropriate.

 We must now determine whether the district court's determination that Hodges' interaction with Midgett constituted "use" of a minor was clearly erroneous. We conclude that it was not. Hodges first argues that he could not have "used" Midgett because he did not know that Midgett was coming to his home to deliver the stolen guns on the day of the robbery. Whether or not Hodges knew Midgett was coming that day, however, has no bearing on our inquiry. Hodges was charged with the possession of a weapon by a felon and with receiving stolen weapons, not with awaiting the possession or receipt of stolen weapons.

 Hodges' criminal activity began, and essentially was completed, once Midgett and the others arrived at Hodges'

home with the guns and Hodges took possession of them. In so doing, Hodges clearly "used" Midgett. Midgett's testimony established that he helped Hodges and the other two boys carry the guns into Hodges' apartment. *See United States v. Rivera*, 248 F.3d 677, 682 (7th Cir.2001) (relying in part on defendant's use of a minor to unload drugs from van to affirm § 3B1.4 sentence enhancement). Because Hodges knew the guns were stolen when he took possession of them, he was guilty at that moment. And, because he took possession of them with Midgett's assistance, he was subject to the § 3B1.4 enhancement for "using" a minor to commit a crime.[2]

Hodges' "use" of Midgett, however, extends to events both before and after the moment he took possession of the guns. The record reveals that Midgett was present at conversations that took place before the burglary, during which Hodges told Thompson that he could sell guns and other items through connections in Chicago. Hodges argues that, because Midgett only overheard these conversations, Hodges only intended to "use" Thompson and that it was Thompson who directly "used" Midgett to commit the burglary. Whether Hodges spoke directly to Thompson or Midgett is of no consequence; Hodges' conversation while Midgett was present can be seen as encouragement to commit the burglary and deliver the guns to Hodges. Hodges was not charged with conspiracy and the government did not need to prove that he reached any agreement with Midgett.

Hodges' conduct following the moment he took possession of the guns also substantiates his "use" of Midgett because Hodges encouraged Midgett and the oth-

---

**2.** We do not mean to suggest, however, that a defendant "uses" a minor in an arm's length transaction such as the purchase by a fence of a gun from a minor; here there was more: the minor "fronted" the guns to Hodges and, as we shall see, assisted in other ways.

ers to leave the guns in his possession so that he could sell them through his Chicago connections. This evidence creates a clear picture that Midgett was at worst a subordinate in Hodges' and Thompson's plan, and arguably even a partner in the deal, thereby establishing Hodges' use of a minor to commit the crimes. The district court's determination was not clearly erroneous and the sentence enhancement was appropriate.

██ In a last ditch effort, Hodges argues for the first time that the meaning of "use" in § 3B1.4 is ambiguous and its meaning should be resolved in his favor pursuant to the rule of lenity. Hodges did not raise this point in the district court and, therefore, waived this argument. We decline to consider it. *Ramsey*, 237 F.3d at 862.

Accordingly, we AFFIRM the decision of the district court.