**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth KIEFFER, Defendant–
Appellant.**

No. 02–4246.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 2003.

Decided June 18, 2003.

Before KANNE, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Kenneth Kieffer was convicted by a jury of three counts of traveling in interstate commerce with intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). The district court sentenced him to three concurrent terms of 132 months' incarceration. On appeal, Kieffer claims that his convictions were tainted by the court's decision to admit certain evidence under Fed.R.Evid. 404(b); this evidence, in his view, fatally undermined his efforts to challenge the accounts of the molestation offered by the three young female victims. While we recognize that there were some factual differences between the evidence offered under Rule 404(b) and the incidents forming the basis of the charges, we find no abuse of discretion in the district court's decision to admit the challenged testimony, and we therefore affirm Kieffer's convictions.

## Background

Kieffer is a 57–year–old married truck driver from White Hall, Illinois. The charges in this case arose from three incidents, over a period of about two years, in which he took a minor female family member (two step-granddaughters and one grand-niece) on an over-the-country trip in his truck, and sexually molested the young passenger along the way. While the girls did not report this conduct immediately, they did so eventually, and in March 2002 Kieffer was charged with three counts of violating § 2423(b)—each count relating to conduct with a different girl.

At trial the victims told a similar tale. "SS," the stepdaughter of Kieffer's step-son, recounted what had happened to her when in 1999, at the age of 13, she took a trip to Colorado with Kieffer. Kieffer, whom SS referred to as grandpa, drove with his pants unbuttoned. At one point, he purchased cigarettes and a beanie baby for her. After stopping for the night, the two slept in the truck's sleeper cab. On three nights, Kieffer touched SS's breasts with his hands while she was trying to sleep. On the second night, he sucked on her breasts and put his fingers inside her vagina. On the third night, he pulled down her pants, tried unsuccessfully to initiate intercourse, and placed her hand on his penis.

SS's younger stepsister, "AS," took a similar trip with Kieffer in early 2000 when she was 12. During this trip, Kieffer, whom AS called her uncle, again drove with his pants unbuttoned and, as he had done with SS, gave AS cigarettes and a beanie baby. On three successive nights, he placed his hands inside her clothes and touched her breasts and vagina. On the third night, Kieffer moved AS's arm to touch his penis.

"RW" whose grandfather's sister is Kieffer's wife, traveled with Kieffer to Missouri in July 2000. Shortly before the trip, the 12–year–old RW, who referred to Kieffer as her uncle, spent the night at Kieffer's home. After Kieffer's wife had gone to bed, Kieffer placed his hand underneath RW's bra. During their trip, Kieffer touched RW under her bra and touched her vagina.

After the three girls had testified, the government moved to introduce the testimony of Christina Vaughn, who took a similar road trip with Kieffer at age 17. Over Kieffer's objection, the district court ruled that Vaughn could testify about her experiences, which the court found relevant to the issues of intent and *modus operandi*, and thus admissible under Rule

404(b). Vaughn, who is RW's aunt (and thus also related to Kieffer), testified that she took an out-of-state trip with Kieffer in August 1998, just after the death of her father. One night after driving, Kieffer asked Vaughn to give him a massage. After she massaged his shoulders, he began rubbing her shoulders and back as she tried to sleep. Kieffer then said three times that it would be easier to give her a massage if she removed her shirt. Vaughn, however, declined his invitation and went to sleep. Because of these suggestions, she cut the trip short and returned home.

The court was careful to instruct the jury about the limited purposes to which it was permitted to put Vaughn's testimony. Nevertheless, the prosecutor highlighted Vaughn's statements in closing argument, suggesting that the reason the jury should believe the victims' stories was, in two words, "Christina Vaughn."

### Discussion

Kieffer's sole challenge to his convictions rests on the district court's decision to admit Vaughn's testimony under Rule 404(b). He has raised no separate challenge to the prosecutor's argument, which he sees as a derivative point. This court reviews the district court's evidentiary ruling for abuse of discretion. *See United States v. Anifowoshe,* 307 F.3d 643, 646 (7th Cir.2002). Evidence of a defendant's prior bad acts is inadmissible under Rule 404(b) if it is offered to demonstrate that the defendant's alleged conduct conformed to his previous behavior. *United States v. Conley,* 291 F.3d 464, 472 (7th Cir.2002). "Rule 404(b) is designed to address a particular evidentiary problem, guarding against the presentation of prior acts *solely* to prove bad character, because a long history of experience has consistently shown that this type of evidence is of negligible value, inflicting more unfair prejudice than revealing helpful truths."

*United States v. Senffner,* 280 F.3d 755, 764 (7th Cir.), *cert. denied,* 536 U.S. 934, 122 S.Ct. 2613, 153 L.Ed.2d 798 (2002) (emphasis added). Under the rule, "other acts" evidence is admissible only if it is relevant to understand the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in committing the offense charged. Fed R. Evid. 404(b); *Conley,* 291 F.3d at 472. In evaluating whether the district court abused its discretion, this court looks at four relevant considerations: (1) the evidence must address a matter in issue other than the defendant's propensity to commit the crime charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence must be sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *United States v. Vaughn,* 267 F.3d 653, 658 (7th Cir.2001).

We are satisfied that the district court did not abuse its discretion by admitting Vaughn's testimony. The evidence was probative of matters in issue other than Kieffer's propensity to commit the crimes charged, because, as the court found, it helped to demonstrate both intent and *modus operandi.* This court has repeatedly held that when a defendant is charged with a specific intent crime, the government may introduce evidence of other acts to prove intent. *See, e.g., United States v. Best,* 250 F.3d 1084, 1091 (7th Cir.2001). Section 2423(b) is a specific intent crime, *see United States v. Vang,* 128 F.3d 1065, 1069 (7th Cir.1997), and this court's precedent establishes that evidence of intent is admissible even when the issue is only nominally contested at trial, *see Best,* 250 F.3d at 1091–92; *see also United States v. Curtis,* 280 F.3d 798, 802 (7th Cir.2002).

And the fact that Kieffer once tried to engage in sexual conduct with another much-younger family member on an interstate trip is certainly relevant to whether an intention to engage in sexual conduct prompted the interstate travel with the three other girls. (Kieffer was over 50 years old at all times relevant to both the three victims implicated in the formal charges and Vaughn.)

Kieffer argues that Vaughn's testimony was inadmissible to show intent because she was of lawful age when he made advances on her and therefore the prior act was not a "crime." But this takes too narrow a view of the specific intent the government was trying to prove. It was trying to show that Kieffer embarked on the long trips in his truck with his young companions with the specific intent of engaging in sexual conduct. The fact that such conduct with Vaughn, who at the age of 17 was legally entitled to consent, may not have been unlawful does not negate the fact that Kieffer had sexual activity in mind on all four occasions. It is also unavailing to argue that the Vaughn incident was inadmissible solely because it might not have been criminal. Rule 404(b) explicitly allows for the admission of other "acts," and is not limited to criminal conduct. *United States v. Senak*, 527 F.2d 129, 143 (7th Cir.1975); *see also United States v. Erickson*, 75 F.3d 470, 478 (9th Cir.1996). The fact that Evidence Rules 413 and 414 relate specifically to sexual assault and child molestation, and authorize consideration only of prior "offenses" is of no matter—neither rule limits the effect of Rule 404(b). Here, even though Vaughn was "legal" at the time of the incident, the significant age disparity between them supports an inference of criminal intent, *i.e.*, that Kieffer took the three other girls on interstate trips with the purpose of engaging in sexual conduct.

Vaughn's testimony was also relevant to establish *modus operandi*, because it revealed Kieffer's distinctive way of luring his young victims into a situation where sexual contact would be easy to establish. *See United States v. Robinson*, 161 F.3d 463, 467 (7th Cir.1998). *Modus operandi* evidence is admissible if it "bear[s] a singular strong resemblance to the pattern of the offense charged." *United States v. Rollins*, 301 F.3d 511, 519 (7th Cir.2002) (internal citation omitted). Kieffer's approach to Vaughn strongly resembled his alleged method of initiating contact with the three other girls and was therefore probative evidence of a pattern of operation. In each instance, Kieffer separated the victim from other adult supervision and protection under the guise of a trip; traveled cross-country with a much younger family member; and made sexual advances toward her in the back of his truck. These incidents fit into a consistent pattern. Given these similarities, Vaughn's testimony tended to show *modus operandi*. *See United States v. Romero*, 189 F.3d 576, 587–88 (7th Cir.1999) (past recordings of defendant's seducing young boys over the telephone was probative of defendant's sexual intent and modus operandi under Fed.R.Evid. 403).

Next, we ask whether the other act was similar enough and close enough in time to the matter in issue. Kieffer does not argue that the Vaughn incident was too removed in time; instead, he contends that the events were dissimilar. But in our view the differences that exist were not so great as to require the district court to exclude this evidence, for the reasons we have already explained. Vaughn's testimony established that Kieffer had sexual interest in a vulnerable family member who was 35 years younger—the similarity between the incidents is striking.

Kieffer also argues that Vaughn's testimony was unfairly prejudicial. But the danger of unfair prejudice was eliminated by the district court's limiting instructions, and Kieffer has not suggested that there was any flaw in those instructions or that the jury failed to follow them, which he would have to do before we could proceed with our prejudice analysis. *See Vaughn,* 267 F.3d at 659. Consequently, he has failed to demonstrate that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Finally, as we noted earlier, Kieffer hints at a prosecutorial misconduct argument, but he never squarely makes one. In closing argument, the prosecutor asked the jury if "it is a coincidence that in light of all this evidence you heard, in light of the testimony of the three girls, Christina Vaughn testifies?" The prosecutor then qualified the remark by telling the jury that Vaughn's testimony was for the limited purpose of demonstrating Kieffer's intent. Later, however, the prosecutor returned to propensity during rebuttal:

> And if there was a one word response to all of Mr. Mote's [defense counsel's] closing argument, or two words, to his entire defense, it would be Christina Vaughn. Not one word about that.
>
> Is it a reasonable alternative to the Defendant's guilt that these girls made all of this up but Christina Vaughn is telling the truth? Or she's lying, too, and they just all four of them happen to get together. There is no reasonable doubt about what happened. No reasonable doubt about what was in his mind.
>
> . . . .
>
> . . . And the evidence is that the Defendant took each of these girls on a trip and touched them, had them touch him. And the evidence is that he also did that with Christina Vaughn.

The prosecutor did not, at that point, remind the jurors again that Vaughn's testimony should be considered for a limited purpose.

We need not decide whether these comments, viewed in the light of the trial as a whole, went too far, although there are many reasons to think that they did not so grossly invite the jury to convict on propensity grounds along that reversal would have been required. In light of the full record in this case, the relatively non-inflammatory quality of Vaughn's testimony (as compared, for example, to the sad tale the victims themselves told), and the district court's careful handling of the matter, these statements certainly do not rise to the level of plain error. *See United States v. Sandoval–Gomez,* 295 F.3d 757, 762 (7th Cir.2002). Kieffer raises this point, it appears, as a way of showing that the government's real motive for introducing Vaughn's testimony was to demonstrate propensity. But the prosecutor made these remarks after the court properly admitted the evidence under Rule 404(b). Kieffer cites no case law, nor have we found any, suggesting that after-the-fact remarks during closing argument have any bearing on the district court's original Rule 404(b) determination.

The judgment of the district court is Affirmed.